Catherine BORDERLON, Petitioner,

v.

Dr. Reigh PECK, Respondent.

No. C–1864.

Supreme Court of Texas.

July 6, 1983.

Rehearing Denied Nov. 23, 1983.

Harry Tom Petersen, El Paso, for petitioner.

Scott, Hulse, Marshall, Feuille, Finger & Thurmond, Charles R. Jones, and Bryan H. Hall, El Paso, for respondent.

McGEE, Justice.

The sole issue in this medical malpractice case is whether article 4590i, section 10.01,[1] abolishes fraudulent concealment as a basis for extending limitations in health care liability actions. The court of appeals held section 10.01 establishes an absolute statute of limitations for all forms of medical malpractice, regardless of fraudulent concealment, and affirmed summary judgment in favor of the doctor. 643 S.W.2d 233. We reverse the judgments of the lower courts and remand the cause for trial.

On January 17, 1979, Dr. Reigh Peck performed surgery on Catherine Borderlon to remove obstructions from her intestines. During the operation, a suture needle broke and Dr. Peck purposely left a portion of the needle in Borderlon's abdominal region. Borderlon testified in deposition that Dr. Peck did not inform her of his decision to leave the needle in her abdomen. Dr. Peck testified in deposition that he did inform Borderlon of this fact. Dr. Peck last treated Borderlon on February 21, 1979. On February 25, 1979, Borderlon underwent x-rays, and was informed there was a small foreign linear object in her abdomen. On March 2, 1979, Borderlon had another operation during which the needle was discovered and removed.

Borderlon filed this medical malpractice action on February 27, 1981, six days after the two-year limitations period in section 10.01 had run. Dr. Peck moved for summary judgment based on limitations. Borderlon subsequently filed a response in which she alleged Dr. Peck fraudulently concealed from her the fact he left the needle inside her. The trial court granted summary judgment for Dr. Peck, and the court of appeals affirmed. The court of appeals held the legislature intended to establish an absolute time limit in which suits must be filed, thereby abolishing fraudulent concealment as an exception to the defense of limitations.

Article 4590i, section 10.01 provides in pertinent part:

Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed; . . .

■ Fraudulent concealment is based upon the doctrine of equitable estoppel. In the proper case, invocation of fraudulent concealment estops a defendant from relying on the statute of limitations as an affirmative defense to plaintiff's claim. Where a defendant is under a duty to make disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence. *Estate of Stonecipher v. Estate of Butts,* 591 S.W.2d 806, 809 (Tex.1979); *Nichols v. Smith,* 507 S.W.2d 518, 519 (Tex. 1974); *Thompson v. Barnard,* 142 S.W.2d 238, 241 (Tex.Civ.App.—Waco 1940) *aff'd,* 138 Tex. 277, 158 S.W.2d 486 (1942); *Sherman v. Sipper,* 137 Tex. 85, 152 S.W.2d 319, 321 (1941); *Fitzpatrick v. Marlowe,* 553 S.W.2d 190, 194 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.); *Elsesser v. Cotham,* 250 S.W.2d 591, 592 (Tex.Civ.App.—San Antonio 1952, no writ).

■ Because the physician-patient relationship is one of trust and confidence, Texas recognizes a duty on the part of the physician to disclose a negligent act or fact that an injury has occurred. *Nichols v. Smith,* 507 S.W.2d at 519; *Fitzpatrick v. Marlowe,* 553 S.W.2d at 194; *Thompson v. Barnard,* 142 S.W.2d at 241. Failure to disclose in such situations constitutes fraudulent concealment which will prevent the wrongdoer from perpetrating further fraud by using limitations as a shield.

■ We do not agree that section 10.01 abolishes fraudulent concealment as an equitable estoppel to the defense of limitations. Texas courts have long adhered to

---

1. All statutory references are to Texas Revised Civil Statutes Annotated.

the view that fraud vitiates whatever it touches, and have consistently held that a party will not be permitted to avail himself of the protection of a limitations statute when by his own fraud he has prevented the other party from seeking redress within the period of limitations. To reward a wrongdoer for his own fraudulent contrivance would make the statute a means of encouraging rather than preventing fraud. *Estate of Stonecipher v. Estate of Butts,* 591 S.W.2d at 809; *Ruebeck v. Hunt,* 142 Tex. 167, 176 S.W.2d 738, 739 (1943); *Glenn v. Steele,* 141 Tex. 565, 61 S.W.2d 810, 810 (1933); *Port Arthur Rice Milling Co. v. Beaumont Rice Mills,* 105 Tex. 514, 522, 143 S.W. 926, 929 (1912); *Heirs of Brown v. Brown,* 61 Tex. 45, 59 (1884); *Munson v. Hallowell,* 26 Tex. 475, 484 (1863).

We hold, therefore, that article 4590i, section 10.01 does not abolish fraudulent concealment as an equitable estoppel to the affirmative defense of limitations under that statute.

■ Our holding does not imply a right of recovery by Borderlon. It merely permits her to present evidence, which, if believed, would estop Dr. Peck from pleading limitations as a bar to her claim for relief. The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action. Knowledge of such facts is in law equivalent to knowledge of the cause of action. *Reubeck v. Hunt,* 176 S.W.2d at 739; *Glenn v. Steele,* 61 S.W.2d at 810. A fact issue exists whether, in the exercise of reasonable diligence, Borderlon knew, or should have known on February 25, that the presence of the foreign object in her abdomen gave rise to a cause of action against Dr. Peck.

The judgments of the lower courts are reversed and the cause is remanded.

Dissenting opinion by BARROW, J., in which POPE, C.J., and CAMPBELL and WALLACE, JJ., join.

BARROW, Justice, dissenting.

I respectfully dissent. I would hold that section 10.01 of article 4590i[1] abolishes fraudulent concealment as an exception to the statute of limitations defense. This holding is compelled by the clear and express language of section 10.01. This section states in part that:

> *Notwithstanding any other law, no* health care liability *claim* may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed . . . . (emphasis added.)

The legislature left no room for question when it selected this language to abolish all court-made exceptions to limitations and impose an absolute two-year statute. Where language in a statute is unambiguous, courts must apply the intent of the legislature as found in the plain and common meaning of the words and terms used. *Railroad Commission of Texas v. Miller,* 434 S.W.2d 670, 672 (Tex.1968). Because courts are not "law-making" bodies, they must take statutes as they find them. *Id.* at 672.

The legislative history also documents the intent of the legislature to impose an absolute two-year statute of limitations. The Texas Medical Professional Liability Study Commission was formed by an act of the legislature to make specific recommendations concerning the medical malpractice crisis.[2] The proposal sent to the legislature by the Study Commission made the following recommendation:

---

**1.** All statutory references are to Texas Revised Civil Statutes Annotated.

**2.** Medical Liability Ins. Underwriting Ass'n Act, ch. 331, § 2, 1975 Tex.Gen.Laws 867, 872–73 (expired 1977).

[T]he statute of limitations be altered so that a claimant must bring a suit within one year from the date the claimant discovered or should have discovered the injury but in no event can the suit be brought more than three years after the injury occurred.[3]

The legislature, however, rejected this recommendation and substituted a compromise provision. The limitations statute passed by the legislature adopted an absolute two year period which begins to run when the treatment upon which the claim is based is completed. This provision delays the start of the limitations period from the date of the injury to the date treatment is completed and the patient is no longer relying on the health care provider. This indicates that the clear intent of the legislature in enacting section 10.01 was to eliminate all prior court developed exceptions to limitations in all medical malpractice cases including the fraudulent concealment of the malpractice. See Witherspoon, *Constitutionality of the Texas Statute Limiting Liability for Medical Malpractice,* 10 Tex.Tech L.Rev. 419, 425 (1979).

The majority circumvents the legislature's intent by holding that fraudulent concealment is an exception to the statute of limitations. The fraud asserted here is based solely on the physician-patient relationship. According to the majority, the existence of the physician-patient relationship creates a duty to disclose the negligent act or injury. The failure to disclose such information constitutes fraudulent concealment which estops the physician from raising limitations as a defense. The majority's reasoning implicitly recognizes the legislature's intent to abolish all the court-made exceptions to the defense of limitations in medical malpractice actions by arbitrarily carving a new category for fraudulent concealment. This reasoning, however, would make the limitations period meaning-

less since every claim against the physician or health care provider involves a physician-patient relationship. The majority's interpretation ignores the rule of statutory construction that the legislature is never presumed to do a useless or meaningless act. *Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 551 (Tex.1981); see *Bomar v. Trinity National Life and Accident Insurance Co.,* 579 S.W.2d 464, 465 (Tex.1979).

In any event, the fraudulent concealment exception would not warrant the reversal of the judgments of the courts below under the facts in this case. The basis for the majority's application of fraudulent concealment rests on the confidential physician-patient relationship. Once this confidential relationship terminated, the duty to disclose and the fraudulent concealment also ceased to exist. *McClung v. Johnson,* 620 S.W.2d 644, 647 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.).

Dr. Peck's treatment of Borderlon was completed on February 21, 1979; therefore, the confidential relationship relied upon by the majority ended at that time. Dr. Peck's "fraudulent concealment" of the cause of action also ended and the two-year limitation began to run. Since Borderlon did not file her action until February 27, 1981, her action was barred even if fraudulent concealment was not abolished by section 10.01.

Furthermore, the record establishes that Borderlon was informed of the facts underlying this action on February 25, 1979 when an x-ray revealed that a small, foreign, linear object remained in her abdomen after the surgery. The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry which, if pursued, would lead to discovery of the concealed cause of action. Knowledge of such facts is equivalent to knowledge of the cause of action. See

---

**3.** Final Report of the Texas Medical Professional Liability Study Commission to the 65th Tex-

as Legislature (1976).

*Nichols v. Smith,* 507 S.W.2d 518, 519 (Tex. 1974); *Ruebeck v. Hunt,* 142 Tex. 167, 176 S.W.2d 738, 739 (1943); *Glenn v. Steele,* 141 Tex. 565, 61 S.W.2d 810 (1933).

It is undisputed that on February 25, 1979 Borderlon was informed of the presence of the foreign object in her abdominal region, the same area Dr. Peck had operated on just eight days earlier. This knowledge alone would, as a matter of law, put Borderlon on inquiry and ended any alleged fraudulent concealment. Her knowledge would have triggered the running of the statute, and the filing of suit on February 27, 1981 would still be outside the two year limitations period.

For all of the foregoing reasons, I would apply section 10.01 as the legislators clearly intended and affirm the judgments of the courts below.

POPE, C.J., and CAMPBELL and WALLACE, JJ., join in this dissenting opinion.