Walter H. STEPHENS, Appellant,

v.

Dr. Truett JAMES and the W.B. Carrell Memorial Clinic, Appellees.

No. 05–83–00219–CV.

Court of Appeals of Texas, Dallas.

May 18, 1984.

Rehearing Denied June 18, 1984.

Jack B. Cowley, Tommy K. Davis, Dallas, for appellant.

Kevin J. Keith, Dallas, for appellees.

Before AKIN, SPARLING and SHUMPERT, JJ.

SHUMPERT, Justice.

This is an appeal of a medical malpractice suit. Summary judgment was granted because the action was barred by the statute of limitations. Appellant Stephens contends: that the alleged malpractice was "fraudulently concealed" from him, tolling the statute of limitations; that there is an issue of fact as to when the concealment ended; and, that summary judgment, therefore, was improperly granted. We disagree. Without deciding whether fraudulent concealment occurred, we hold that even if fraudulent concealment occurred, the statute of limitations had run before Stephens filed suit. Accordingly, we affirm.

The movants, appellees James and the Clinic, must have established that they were entitled to summary judgment, as a matter of law, by conclusively proving that no genuine issue of material fact existed as to Stephens' cause of action or their defense. TEX.R.CIV.P. 166–A; *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979); *Gibbs v. General Motors Corporation,* 450 S.W.2d 827, 828 (Tex.1970). By moving for summary judgment on the basis of the running of limitations, James and the Clinic assumed the burden of showing, as a matter of law, that the suit was barred by limitations. *Zale Corporation v. Rosenbaum,* 520 S.W.2d 889, 891 (Tex.1975); *Oram v. General American Oil Company of Texas,* 513 S.W.2d 533, 534 (Tex.1974).

Medical malpractice causes of action arising after June 3, 1975, and before August 30, 1977, are controlled by TEX.INS.CODE ANN. art. 5.82 § 4.[1] *Nelson v. Krusen and Baylor University Medical Center,* 27 Tex.Sup.Ct.J. 82 (November 16, 1983); *Delgado v. Burns,* 656 S.W.2d 428 (Tex.1983); *Harvey v. Denton,* 601 S.W.2d 121 (Tex. Civ.App.—Eastland 1980, writ ref'd n.r.e.). That section provides, that notwithstanding any other law, no claim against a person or hospital may be commenced unless the action is filed within two years of the alleged tort. Because the events here occurred between June 3, 1975, and August 30, 1977, the applicable statute of limitations is the two-year period prescribed by article 5.82.

These facts are undisputed:

May 6, 1976—Stephens underwent hip replacement surgery, performed by Dr. James. Prosthesis allegedly driven through femoral shaft.

August 3, 1976—Two x-rays taken at Carrell Clinic showing protruding prosthesis, but x-rays not shown to Stephens.

May 2–6, 1977—Stephens examined at Lackland Air Base. He was shown x-rays by Dr. Morey showing prosthesis protruding through femoral wall.

---

1. Repealed by Acts 1977, 65th Leg.P. 2064, ch. 817, Pt. 4, Section 41.03, eff. Aug. 29, 1977.

May 6–11, 1977—Stephens returned to Carrell Clinic and discovered two August 3, 1976, x-rays showing prosthesis protruding through femoral wall.

May 27, 1977—Dr. Head examined Stephens and advised him of the need for extensive corrective hip surgery.

June 10, 1977—Total hip replacement performed by Dr. Head.

May 17, 1979—Lawsuit filed.

■ Stephens initially contends that the "discovery rule" applies to determine when the statute of limitations began to run. We disagree. The "discovery rule" states that when a patient suffers an inherently nondiscoverable injury, the statute of limitations is tolled until the patient learns of, or in the exercise of reasonable care and diligence should have learned of, the physician's negligent act. The discovery rule is inapplicable here, as it does not apply in cases arising under article 5.82. *Nelson,* 27 Tex.Sup.Ct.J. at 83.

■ In *Nelson,* the court did hold, however, that the fraudulent concealment doctrine applies to cases under article 5.82. The court stated:

> The doctrine of fraudulent concealment rests on entirely different policy considerations and is invoked in contexts distinguishable from those in which the "discovery rule" applies. This Court provided the following statement of the rule in *Nichols v. Smith,* 507 S.W.2d 518, 519 (Tex.1974): "When the defendant is under a duty to make a disclosure but fraudulently conceals the existence of a cause of action from the one to whom it belongs, the guilty party will be estopped from relying on the defense of limitations until the right of action is, or in the exercise of reasonable diligence should be, discovered." Therefore, if a physician commits a negligent act and if the physician has knowledge of the unreasonableness of his conduct, he will be estopped from asserting the statute of limitations as a defense until the plaintiff knows, or should know, of facts giving rise to the cause of action. *Thompson v. Barnard,* 142 S.W.2d 238 (Tex.Civ.App.

—Waco 1940), *aff'd,* 138 Tex. 277, 158 S.W.2d 486 (1942). *Nelson,* 27 Tex.Sup.Ct.J. at 84.

It is entirely possible here, that neither James nor anyone at the clinic ever saw the August 3, 1976, x-rays and that there was no fraudulent concealment. For purposes of this opinion, however, we assume, but do not decide, that a fraudulent concealment occurred when James and the Clinic did not inform Stephens of the protruding prosthesis apparent in the August 3, 1976, x-rays.

Both parties argue that language from *Borderlon v. Peck,* 661 S.W.2d 907 (Tex. 1983), is dispositive of this appeal. Stephens argues that the following paragraph controls:

> Where a defendant is under a duty to make disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence. *Borderlon,* 661 S.W.2d at 908.

Stephens then argues that he did not learn of the cause of action until May 27, 1977, at the earliest, when he talked with Dr. Head, and that the suit, therefore, was not barred by limitations.

James and the Clinic argue that the following language controls:

> The estoppel effect of a fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which if pursued, would lead to discovery of the concealed cause of action. Knowledge of such facts is in law equivalent to knowledge of the cause of action. *Borderlon,* 661 S.W.2d at 909.

James and the Clinic argue that if a fraudulent concealment occurred, the tolling of the limitations period ended on May 11, 1977, at the latest, when Stephens procured and understood the significance of the August 3, 1976, x-rays.

We conclude that these two paragraphs from *Borderlon* do not articulate different standards, but rather, that the language cited by James and the Clinic explains that cited by Stephens. We are so convinced because Justice McGee authored both *Nelson* and *Borderlon,* and in *Nelson,* he explained the fraudulent concealment doctrine in one paragraph, using language similar to the two quotations in *Borderlon.* There is but one fraudulent concealment doctrine, and it does not change from *Borderlon* to *Nelson.* The issue then, is when Stephens knew or should have known, as a matter of law, of facts, conditions, or circumstances, which, if pursued, would have led to discovery of the concealed cause of action. *Borderlon,* 661 S.W.2d at 908, 909.

The deposition testimony offered in support of the summary judgment shows that Stephens was at Lackland Air Base between May 2 and May 6, 1977, and at that time was shown x-rays indicating that his prosthesis was protruding through his femoral shaft. Shortly thereafter, Stephens discovered that he had not been given two x-rays taken on August 3, 1976, by the Carrell Clinic, despite the fact that James had told him that he had been given all of his x-rays so that he could take his complete medical history to Lackland for another opinion. Stephens then went to the Carrell Clinic on a day he knew that James would be out of the office. Stephens went into the back room and discovered two of his x-rays dated August 3, 1976. Those x-rays revealed the same protrusion of the prosthesis through the femoral wall that had been revealed in the x-rays taken at Lackland.

Stephens states, in his affidavit attached to his response to defendant's motion for summary judgment, that he does not know how to read x-rays, and that he did not know what the x-rays revealed until Dr. Head looked at the x-rays on May 27, 1977. His deposition, however, indicates otherwise. In pertinent part, it states as follows:

Q. [w]hat did that tell you when you got those two x-rays?

A. That Dr. James and/or someone in his clinic was aware of the protrusion and I was very bitter, because it had never been discussed with me at any time. I was—I had been told on innumerable occasions that whatever the occasion of the pain that I was complaining about and begging for some relief from had nothing to do with the hip surgery—I was shown x-rays by Dr. James and he told me he called my wife in, okay, after the surgery and said, "I'm afraid that the general is very much upset that whatever is the occasion of this pain, it is not the hip, because the hip surgery was perfect."

Q. So within three to five days after you returned from Lackland, you knew that x-rays as of August 3, 1976, showed the protrusion of the prosthesis which Dr. Morey had told you was the source of your problems?

A. That is correct.

Stephens also states in his deposition, that within twenty-four to forty-eight hours after he procured the August 3, 1976, x-rays, he showed them to his next door neighbor, radiologist Dr. Robert B. Connor, and that Connor pointed out the obvious protrusion of the prosthesis through the femoral wall.

Further, Stephens' wife, in her deposition, was asked about the first conversation she had with Stephens after he had obtained the two August 3, 1976, x-rays. A portion of her deposition states:

Q. All right. Now, tell me about the first conversation you had with your husband after he went on that Wednesday and obtained the x-rays.

A. There was not much conversation. He came home that Wednesday weeping with the x-rays in his hand, and he was so shocked that he had gotten these out of Truett's office, that he just couldn't believe that Truett had this knowledge on August the 3rd.

Q. Well, he was not shocked that there were x-rays there, was he?

A. He was shocked that it showed the protrusion. . . .

Q. Your discussion was whether he (Dr. James) looked at all?

A. Whether he ordered them and didn't look at them, or whether he looked at them and didn't tell us. We were just so shocked to find that Dr. James had an x-ray showing this protrusion in his office.

 By May 11, 1977, Stephens had looked at the August 3, 1976, x-rays and knew from what he had been shown at Lackland that the protrusion existed on August 3, 1976. This knowledge was confirmed within forty-eight hours by his neighbor, the radiologist. Stephens also knew that he had not been apprised by James or anyone else at the Clinic of the protrusion, and that he had been told by James after the May 6, 1976, surgery that he had a perfect hip. We hold that by May 11, 1977, Stephens knew of facts, conditions, or circumstances which would cause a reasonable person to make inquiry, as he did, which if pursued, would lead to discovery of the concealed cause of action. Knowledge of these facts, conditions, or circumstances is in law equivalent to knowledge of the cause of action. *Borderlon*, 661 S.W.2d at 909; *Ruebeck v. Hunt*, 142 Tex. 167, 176 S.W.2d 738, 739 (1943). Stephens, therefore, had knowledge of his potential cause of action by May 11, 1977, at the latest. If there was fraudulent concealment, its estoppel effect ended, and the statute of limitations began to run, on that date. Stephens had two years from May 11, 1977, to file his lawsuit, and we hold, therefore, that this suit, filed May 17, 1979, was barred by the statute of limitations. Stephens' contentions based on the fraudulent concealment doctrine are overruled.

In his brief, Stephens raised several other points of error. His points relating to theories based on fraud and misrepresentation, however, were waived at oral argument, and we need not reach his constitutional arguments because our holding based on the statute of limitations renders them moot.

The judgment is affirmed.