In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-02-00018-CV

____________


MERRILL INVESTMENTS, LTD. and 

JUTTA OBEROI, Appellants


V.


THE COASTAL CORPORATION,

COSCOL PETROLEUM CORPORATION, and

COASTAL SECURITIES COMPANY LIMITED, Appellees






On Appeal from the 215th District Court 

Harris County, Texas

Trial Court Cause No. 1999-57272 





O P I N I O N


 Merrill Investments, Ltd. (1) and Jutta Oberoi, appellants, brought an action
against the Coastal Corporation, Coscol Petroleum Corporation, and Coastal
Securities Company, Ltd. (collectively, Coastal) for breach of contract and a related
equitable claim for accounting. We are asked to decide if the trial court erred in
granting Coastal's motion for summary judgment on the issue of limitations. We
affirm.

Facts

 In either 1980 or 1981, Jutta Oberoi and Duke Walia formed Oberoi Walia and
Associates, a consulting partnership designed to facilitate oil transactions between
foreign corporations and the Indian Oil Corporation (IOC). At that time, the IOC, a
government-owned oil company, was the only entity in India that could buy or sell
petroleum products. As consultants, Oberoi Walia and Associates sought to provide
foreign corporations with information regarding IOC operations and business affairs. 
 In March 1982, Oberoi and Walia formed Merrill Investments, Ltd., a
Bahamian company established to collect commissions owed to Oberoi Walia and
Associates. From 1982 through 1993, Oberoi and Walia each owned 47.5% of
Merrill. Merrill's business affairs were handled by Chemical Bank, where Oberoi and
Walia served as joint signatories. 

 In April 1982, Oberoi Walia and Associates entered into a written contract with
Coastal, in which Oberoi and Walia agreed to serve as Coastal's agents in India. 
Under the contract, Oberoi and Walia were to arrange meetings between Coastal and
the IOC, advise Coastal on IOC business practices, and facilitate negotiations and
transactions with the IOC. In exchange, Coastal agreed to pay a commission on each
metric ton of oil and petroleum products bought and sold between Coastal and the
IOC. All commission payments were made to Merrill and then distributed to Oberoi
and Walia. Coastal was Merrill's only client, and all commissions received by Merrill
were paid by Coastal. 

 From 1982 to 1985, the IOC and Coastal conducted numerous oil transactions
for which Merrill was paid a commission. During this time, these commissions were
distributed to Oberoi and Walia in accordance with their contract. Oberoi authorized
and approved all distributions. 

 In 1985, Oberoi froze funds at Chemical Bank due to a disagreement with
Walia. Oberoi and Walia settled their dispute pursuant to another contract drafted in
July 1985. Under this contract, Walia assumed complete control of Merrill, whereby
he would direct all of Merrill's management and operations. Oberoi would continue
to receive commission payments; however, these payments would not be distributed
from Merrill, but instead would be paid directly from Coastal to Oberoi's private
bank account. Thereafter, Coastal made two or three direct commission payments to
Oberoi, the last of which occurred in January 1986. 

 In 1993, Oberoi received documents that led her to believe that Walia was
hiding money from her while mismanaging Merrill. Oberoi showed these documents
to Sam Willson, a senior vice president of Coastal. Willson then contacted Walia and
told him about the documents. After speaking with Willson, Walia admitted to
Oberoi that he had mismanaged Merrill's accounts and offered to settle the dispute. 
On April 13, 1993, Oberoi and Walia signed a settlement agreement that provided for
(1) payment of $1.125 million to Oberoi over a 10-year period, (2) the transfer of
100% ownership of Merrill to Oberoi, and (3) a promise by Walia to provide Oberoi
all of Merrill's books and records. This settlement released Walia from any future
liabilities relating to his management of Merrill. 

 Unbeknownst to Oberoi at the time of the 1993 settlement, Walia had accepted
a position at Coastal in 1991 as senior vice president of far east production. Before
the 1993 settlement, Walia sought advice from Willson, who advised Walia to "sort
this thing out" and avoid getting Coastal involved in a "dirty dispute." In addition,
Coastal agreed to pay the $1.125 million settlement owed to Oberoi. 

 In 1995, Oberoi had yet to receive Merrill's book and records pursuant to the
1993 settlement agreement. Thus, Oberoi's attorney sent a letter to Walia requesting
that he provide the books and records. In response, Walia sent Oberoi two invoices
from 1983, but never provided her with any books or records concerning
commissions received by Merrill from 1985 to 1993. 

 As a result, Oberoi asked Willson to provide copies of Merrill's invoices to
Coastal, and Willson promised he would look for them. Willson never provided any
invoices to Oberoi, however, and later informed her that the invoices were probably
lost. When Willson failed to provide any invoices, Oberoi wrote a letter to Coastal
requesting the invoices, and Coastal responded that the invoices were not available. Because Coastal gave various excuses explaining why the invoices were
unavailable, Oberoi began to suspect that Coastal was deliberately hiding records that
would reveal commissions owed and unpaid to her and filed suit against Coastal on
November 17, 1999. After filing suit, Oberoi learned of Walia's position with
Coastal and Coastal's involvement in the 1993 settlement. 

Standard of Review

 In one general point of error, Oberoi claims the trial court erred by rendering
summary judgment in favor of Coastal because Coastal's breach of contract claim was
barred by the four-year statute of limitations. (2) Summary judgment is proper only
when the movant establishes there is no genuine issue of material fact and it is
entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr.
Property Management Co., 690 S.W.2d 546, 548 (Tex. 1985). In conducting our
review, we take as true all evidence favorable to the nonmovant and make all
reasonable inferences in the nonmovant's favor. See KPMG Peat Marwick v. HCH,
988 S.W.2d 746, 748 (Tex. 1999). 

Statute of Limitations

 A defendant moving for summary judgment on the affirmative defense of
limitations has the burden to conclusively establish that defense. KPMG Peat
Marwick, 988 S.W.2d at 748. Thus, Coastal had to (1) conclusively prove when the
cause of action accrued and (2) negate the discovery rule, if it applies, by proving as
a matter of law that there is no genuine issue of material fact about when Oberoi
discovered, or in the exercise of reasonable diligence should have discovered, the
nature of her injury. See id. 

 A cause of action generally accrues when a wrongful act causes some legal
injury, even when the fact of injury is not discovered until later, and even if all of the
resulting damages have not yet occurred. S.V. v. R.V., 933 S.W.2d 1, 4 (Tex. 1996). 
The general rule is applied with the exception of the discovery rule, which operates
to defer accrual and toll statutes of limitations. See Mellon Service Co. v. Touche
Ross & Co., 17 S.W.3d 432, 435-36 (Tex. App.--Houston [1st District] 2000, no
pet.). The discovery rule is applied in two types of cases: (1) when a defendant has
fraudulently concealed a plaintiff's injury; and (2) where the nature of the injury is
inherently undiscoverable, but may be objectively verified. Id. at 436. When a cause
of action is deferred by the discovery rule, the cause of action does not accrue until
the plaintiff knew or should have known of the wrongful act and resulting injury. Id. 

 Because Oberoi filed suit against Coastal on November 17, 1999, the accrual
date for her cause of action can be no earlier than November 17, 1995, or the claim
will be barred. Oberoi, however, seeks commission payments from Coastal for oil
transactions that occurred sometime between 1985 and 1993, at least two years before
November 17, 1995. These claims are barred by limitations unless the discovery rule
applies. 

 Oberoi invokes both facets of the discovery rule to assert that the accrual date
for her cause of action should be deferred until 1998 or 1999, the date she began to
suspect Coastal's misconduct. Oberoi claims that (1) Coastal fraudulently concealed
its oil transactions with the IOC in an effort to avoid paying commissions to her and
(2) Oberoi's injury was inherently unidentifiable when it occurred, but can be
objectively verified. If either claim is satisfied, the accrual date for Oberoi's cause
of action may be deferred only until Oberoi knew or should have known of her injury. 
Once Oberoi knew or should have known of her injury, the cause of action accrued
and limitations began to run. See id. Accrual of Merrill's Breach of Contract Claim When the discovery rule is applied, the cause of action accrues when the fact
of injury is known, not when the responsible parties are known. See Childs v.
Haussecker, 974 S.W.2d 31, 40 (Tex. 1998); Mellon Service Co., 17 S.W.3d at 436. 
A party seeking to defer accrual and toll limitations must exercise reasonable
diligence to learn of its cause of action. See Borderlon v. Peck, 661 S.W.2d 907, 908
(Tex. 1983). We may determine commencement of limitations as a matter of law if
reasonable minds could not differ about the conclusion to be drawn from the facts in
the record. See Childs, 974 S.W.2d at 44. If Coastal has shown that Oberoi either
knew or should have known of her injury before November 17, 1995, then Oberoi's
claim is barred by limitations, irrespective of when she discovered all responsible
parties. See id. 

 Oberoi seeks commissions owed and unpaid to her pursuant to the 1982 and
1985 contract agreements between Oberoi Walia and Associates and Coastal.
Assuming, arguendo, that the discovery rule applies in this case, the rule cannot
operate to defer accrual of Oberoi's claim beyond 1993. The summary judgment
record reveals that, on two separate occasions, Oberoi knew or should have known
of her injury.

 The first occasion occurred in 1990 or 1991. During this time, Oberoi
participated in actual business meetings being conducted between Coastal and the
IOC in which Walia was present. Oberoi heard rumors that Walia was conducting
business during this time frame. When asked if she thought oil transactions were
being conducted, Oberoi responded, "90 percent yes, there was." Because Oberoi
was 90 percent sure that oil transactions were being conducted, she should have been
90 percent sure that commissions were owed to her. Yet, Oberoi did not seek any
commissions from Coastal. 

 The second occasion occurred in 1993, when Oberoi settled with Walia for the
same injury that she now claims against Coastal: the withholding of commissions
resulting in breach of contract. Oberoi knew that Walia was mismanaging money
resulting in financial loss to Oberoi. However, Oberoi sought and received redress
only from Walia, in spite of knowledge that commissions handled by Walia were
necessarily paid by Coastal, who was at all times Merrill's only client. Oberoi knew
that, if Walia was being paid commissions, she was owed commissions as well. Yet,
again, Oberoi did not seek any commissions from Coastal. 

 This evidence shows that Oberoi either knew or should have known of her
injury before November 17, 1995. Although Oberoi testified that it wasn't until 1998
or 1999 before she realized Coastal's misconduct, the cause of action accrues when
the fact of injury is known, not when the responsible parties are known. See Childs,
974 S.W.2d at 40; Mellon Service Co., 17 S.W.3d at 436. At best, Oberoi has shown
that she did not discover Coastal's participation in her breach of contract claim until
1998 or 1999. For purposes of accrual, however, our inquiry turns only on Oberoi's
knowledge of her injury. See id. In light of the evidence, Oberoi's injury should
have become apparent no later than 1993. Thus, her claim is barred by limitations.

Conclusion 

 Coastal met its burden on summary judgment by presenting sufficient evidence
to conclusively prove that Oberoi knew or should have known of her injury before
November 17, 1995. See Childs, 974 S.W.2d at 44. We hold the trial court did not
err in granting Coastal's motion for summary judgment on the issue of limitations. 

 We overrule appellant's point of error. 

 We affirm the judgment of the trial court.







 Elsa Alcala


 Justice


Panel consists of Justices Taft, Alcala, and Price. (3)


Do not publish. Tex. R. App. P. 47.4.
1. Merrill Investments Ltd. is now solely controlled, managed, and owned by
Oberoi and thus serves as her alter-ego in this suit.
2. See Tex. Civ. Prac. & Rem. Code § 16.004(a)(3) (Vernon Supp. 2002)
(statute of limitations for contract claims is four years). Both Oberoi and
Coastal concede section 16.004(a)(3) applies in this case.
3. The Honorable Frank C. Price, former Justice, Court of Appeals, First District
of Texas at Houston, participating by assignment.