K7 Enterprises, Inc

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-312-CV

K-7 ENTERPRISES, L.P. APPELLANT

V.

JESWOOD OIL COMPANY, TOM D. APPELLEES

JESTER, JR., PAUL M. HAYWOOD, 

JR., DEMAB CORPORATION, AHMED 

ELMADHOUN, BILL ELMADHOUN, AND 

P.J.’S CONVENIENCE STORES, INC.

------------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1) ON REHEARING

------------

Appellant K-7 Enterprises, L.P.’s motion for partial rehearing is denied.  We withdraw our opinion and judgment of June 3, 2004 and substitute the following in its place.  We write on rehearing to address K-7's estoppel and fraudulent concealment claims.

I.  Introduction

Appellant K-7 Enterprises, L.P. sued Appellees, the owners and operators of PJ’s Convenience Stores, Inc., for damages occurring when toxic chemicals leaked from underground gasoline tanks at PJ’s #2 convenience store and migrated onto K-7's adjacent property, contaminating it.  The trial court granted a traditional summary judgment for Appellees on limitations grounds.  Because K-7's controverting summary judgment evidence raises genuine issues of material fact as to whether the contamination damages to K-7's property were temporary and not permanent, we reverse the trial court’s summary judgment as to K-7's claim for damages to its property sustained during the two years prior to filing suit, that is injuries occurring on or after January 15, 2001, and remand those claims to the trial court.  We affirm the trial court’s summary judgment on K-7's claims for damages sustained more than two years prior to filing suit, that is, prior to January 15, 2001.

II.  Standard of Review

A defendant is entitled to summary judgment on an affirmative defense such as limitations if the defendant conclusively proves all the elements of the affirmative defense.  
KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.
, 988 S.W.2d 746, 748 (Tex. 1999)
.  To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law.  
Ryland Group, Inc. v. Hood,
 924 S.W.2d 120, 121 (Tex. 1996).  
Once the defendant produces sufficient evidence to establish the right to summary judgment based on limitations, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to a matter in avoidance of limitations.  
See, e.g., Zale Corp. v. Rosenbaum, 
520 S.W.2d 889, 891 (Tex. 1975); 
Forrest v. Vital Earth Res.
, 120 S.W.3d 480, 
487 (Tex. App.—Texarkana 2003, pet. denied).

In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the nonmovant.  
Tex. R. Civ. P.
 166a(c); 
S.W. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); 
Nixon v. Mr. Prop. Mgmt. Co.
, 690 S.W.2d 546, 548-49 (Tex. 1985).  Every reasonable inference from the evidence will be indulged in favor of the nonmovant, and any doubts will be resolved in the nonmovant’s favor. 
 Nixon
, 690 S.W.2d at 549.  
Applying this standard of review to the summary judgment evidence, the facts viewed in the light most favorable to K-7 are set forth below.

III.  Factual Background

In February 1998, a prospective purchaser of the K-7 property obtained an environmental site assessment of the property.  The results of the site assessment soil borings and groundwater samples revealed that the K-7 property was contaminated with toxic substances generally associated with the underground storage of gasoline.  The toxic substances present in the K-7 soil and groundwater exceeded the state-allowed levels.  A PJ’s convenience store located adjacent to the K-7 property, PJ’s #2, sold gasoline and stored it in underground storage tanks.  Consequently, K-7 made a claim against PJ’s Convenience Stores, Inc.’s insurer, Tank Owners Mutual Insurance Company, (“TOMIC”), and TOMIC agreed to clean up or remediate K-7's property and to be responsible for any damages.  Monitoring wells were placed on the K-7 property.  Eventually, the monitoring wells were removed, and K-7 believed that its property had been cleaned and that the contamination was now below state action levels.  K-7 later learned that subsequent leaks had occurred at PJ’s #2 and that the contaminants had migrated sporadically onto K-7's property depending on rainfall and other factors.  K-7 filed suit on January 15, 2003. 

K-7's president, Dennis Koop, explained in his controverting affidavit that in May 2002 he learned from the Texas Natural Resource Conservation Commission (“TNRCC”) records that TNRCC “had found that another release of gasoline had occurred between December 1999 and March 2000.”  A TNRCC interoffice memorandum also filed by K-7 as controverting summary judgment evidence indicates that, based on an increase in the measure of toxins from 7.1 ppm to 326.55 ppm, “it appears that a subsequent release from the UST [underground storage tank] system occurred between 12/99 and 3/00.”

The memo explains that “the groundwater gradient [from P.J.’s convenience store] is to the south-southeast,” and the parties agree that the K-7 property is to the south of PJ’s convenience store.

K-7 also attached the affidavit of Daniel Airey as controverting summary judgment evidence.  Airey’s affidavit indicates that he has been “personally involved in the investigation of the source and impact of the hydrocarbon contamination of K-7 property.”  According to Airey,

Contaminant migration direction has been documented on multiple occasions to be from the PJ’s #2 facility towards the K-7 property. The release and migration of contaminants from the PJ’s #2 property onto the K-7 property is sporadic and intermittent based on multiple factors such as rainfall and the heterogeneity of the subsurface lithology, and has occurred periodically during the period of 1998 to the present as well as many other periods of time.  . . .  The injury to the K-7 property is periodic, sporadic, and intermittent, and is not constant and continuous.

Another of K-7's experts, Sullivan Curran, executed an affidavit that K-7 relied upon as controverting summary judgment evidence explaining discrepancies in Appellees’ monthly inventory control sheets for gasoline stored on the PJ’s #2 property.  Curran summarized that the records “show significant discrepancies for the years 2001 and 2002 in Unleaded, Plus and Super gasoline quantities” delivered to PJ’s #2 and those quantities accounted for by PJ’s #2 “resulted in significant unaccounted losses of gasoline stored and dispensed.”  Curran explained that in addition to the intermittent or sporadic gasoline losses, corrected data from the inventory control sheets show the likelihood of a separate and significant loss in Super gasoline during May and June of 2002.

IV.  Genuine Issues of Material Fact Exist as to Whether Damages to K-7's Property were Temporary and not Permanent

K-7's original suit sought damages because “[d]ue to the negligent, careless, and/or reckless behavior of one or more of these Defendants, these underground storage tank systems have leaked on more than one occasion,” and alleged that the petroleum products migrated underground and contaminated K-7's property.  Appellees moved for summary judgment on the affirmative defense of limitations, alleging that “Plaintiff admits having had actual knowledge of the contamination in February 1998, almost five years before Plaintiff filed this lawsuit.” 

A suit for damage to land must be brought not later than two years after the cause of action accrues.  
Tex. Civ. Prac. & Rem. Code Ann.
 § 16.003(a) (Vernon 2002).  The determination of the accrual date depends upon whether the damage to the land is characterized as permanent or temporary. 
Schneider Nat’l Carriers, Inc. v. Bates,
 147 S.W.3d 264, 270 (Tex. 2004); 
Nugent v. Pilgrim's Pride Corp.
, 30 S.W.3d 562, 567 (Tex. App.—Texarkana 2000, pet. denied).  An action for permanent damages to land accrues, for limitations purposes, upon discovery of the first actionable injury.  
Bayouth v. Lion Oil Co.
, 671 S.W.2d 867, 868 (Tex. 1984),
 disapproved of on other grounds, Schneider Nat’l Carriers, Inc.
, 147 S.W.3d at 281 n.78; 
Tennessee Gas Transmission Co. v. Fromme
, 153 Tex. 352, 269 S.W.2d 336, 354 (1954).  But damages for temporary injuries may be recovered for injuries sustained within the two years prior to filing suit.  
Bayouth
, 671 S.W.2d at 868.  The character of an injury as either permanent or temporary is determined by the consequences flowing from it.

Thus, if a nuisance occurs several times in the years leading up to a trial and is likely to continue, jurors will generally have enough evidence of frequency and duration to reasonably evaluate its impact on neighboring property values.  In such cases, the nuisance should be treated as permanent, even if the exact dates, frequency or extent of future damage remain unknown.  Conversely, a nuisance as to which any future impact remains speculative at the time of trial must be deemed “temporary.”

Schneider Nat’l Carriers, Inc.
, 147 S.W.3d at 280.

While these general rules governing whether an injury is temporary or permanent seem straightforward, applying them to the facts involved in any particular case has proved difficult.  
Nugent
, 30 S.W.3d at 569 (setting forth an excellent discussion of cases addressing whether various types of injuries to land are permanent or temporary).  In determining whether an injury to land is permanent or temporary, it is helpful to focus first on the activity causing the injury and then on the injury itself.  
Walton v. Phillips Petroleum Co.
, 65 S.W.3d 262, 273 (Tex. App.—El Paso 2001, pet. denied).

Here, the activity involved the underground storage of gasoline. Appellees’ activity, simply storing gasoline in tanks underground, did not cause any damage to K-7's property.  The summary judgment evidence shows that the injury causing damage to K-7's property was multiple gasoline leaks from the underground storage tanks on the PJ’s #2 property, occurring on distinct occasions including one in May or June of 2002, and the sporadic and intermittent migration of the contaminants onto K-7's property depending on rainfall and the “heterogeneity of the subsurface lithology.”  No summary judgment evidence exists in the record that the gasoline storage tanks at PJ’s #2 leaked continuously.  In fact, Appellees’ summary judgment evidence includes tank tightness tests performed on the tanks at PJ’s #2 indicating that at the times the tanks were tested they were not leaking.  Viewed in the light most favorable to K-7, these facts raise a genuine issue of material fact as to the temporary nature of the damages to the K-7 property.  
See, e.g., Schneider Nat’l Carriers, Inc., 
147 S.W.3d at 280-81 (explaining that a nuisance that occurs monthly but is about to be cleaned up so that surrounding property values are restored may be temporary); 
Bayouth
, 671 S.W.2d at 868 (holding a genuine issue of material fact exists as to whether damage from salt water migration onto adjacent land was a temporary injury); 
Atlas Chem. Indus., Inc., v. Anderson, 
524 S.W.2d 681, 684-85 (Tex. 1975) (holding damage from deposits left on land when wastewater from chemical plant discharged into creek that flowed onto land a temporary injury); 
Austin & N.W. Ry. Co. v. Anderson
, 79 Tex. 427, 15 S.W. 484, 485 (1891) (holding flooding of land occurring only during heavy rains because of a railroad’s construction of roadbeds and culverts that changed the natural flow of surface water a temporary injury); 
Nugent
, 30 S.W.3d at 566, 571 (holding damage from arsenic contamination of land occurring when rain washed chicken litter and hatchery waste downstream a temporary injury).  In other words, in light of K-7's controverting summary judgment evidence that the underground storage tanks at PJ’s #2 suffered multiple, distinct gasoline discharges and that the discharged gasoline migrated sporadically and intermittently onto K-7's property, Appellees did not conclusively establish that the injuries to K-7's property were permanent.  
Cf. Fromme
, 269 S.W.2d at 337 (holding damage from water flowing continuously from compression station across plaintiff’s property was a permanent injury); 
Walton
, 65 S.W.3d at 272 (holding damage from water seeping through salt pit filled in the late 1960's was permanent and suit brought in 1996 was time barred).  Summary judgment evidence exists that current experiences are unrepresentative.  
See Schneider Nat’l Carriers, Inc., 
147 S.W.3d at 
280.
 

We next address Appellees’ arguments concerning K-7's summary judgment evidence.  Appellees lodged objections to portions of K-7's summary judgment evidence, including Airey’s and Curran’s affidavits.  K-7 subsequently tendered supplemental affidavits from Airey and Curran.  Appellees lodged objections to the supplemental affidavits, but the trial court did not rule on them and signed an order granting K-7 leave to file the supplemental affidavits. Appellees claim on appeal that the trial court “implicitly” sustained their objections to K-7's summary judgment evidence and urge this court to not consider the objected-to evidence.  A party must obtain a ruling on an objection as to defects in the form of an affidavit or attachment, or it is not preserved for our review. 
 See
 
Tex. R. Civ. P. 
166a(f) ("Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend."); 
Wren v. G.A.T.X. Logistics, Inc
., 73 S.W.3d 489, 498 (Tex. App.—Fort Worth 2002, no pet.) (op. on reh’g).  Because the trial court did not rule on Appellees’ objections, their form objections are not preserved for our review. 
 See Wren
, 73 S.W.3d at 498.  Appellees lodged substantive objections to Airey’s and Curran’s supplemental affidavits, but when the trial court granted K-7 leave to file those affidavits it implicitly overruled Appellees’ objections.  
See
 
Tex. R. App. P.
 33.1(a); 
see also Rapp v. Mandel & Wright
, 
P.C.
, 127 S.W.3d 888, 895 (Tex. App.—Corpus Christi 2004, pet. denied) (op. on reh’g) (recognizing trial court implicitly overruled appellant’s motion to strike intervention by proceeding to trial and granting relief for intervener); 
Chappell v. State
, 850 S.W.2d 508, 510 (Tex. Crim. App. 1993) (recognizing trial court implicitly overruled defendant's objection to jury shuffle by granting State's motion to shuffle).  When the trial court took action inconsistent with the sustaining of Appellees’ objections to Airey’s and Curran’s affidavits, i.e., signing an order granting leave to file the supplemental affidavits, it implicitly 
overruled
 Appellees’ objections, rather than implicitly sustaining them as Appellees argue.  Consequently, we consider Airey’s and Curran’s supplemental affidavits as properly part of the summary judgment record before us.  We sustain K-7's first and second issues.  

In its third issue, K-7 claims that the trial court erred by granting summary judgment because the continuing tort doctrine applies.  The continuing tort doctrine involves continuing wrongful conduct and continuing injury.  
Dickson Constr., Inc. v. Fid. and Deposit Co. of Maryland
, 960 S.W.2d 845, 851 (Tex. App.—Texarkana 1997, no writ).  Because, as outlined above, the summary judgment evidence establishes that the PJ’s #2 storage tanks suffered multiple, distinct gasoline discharges and that the discharged gasoline migrated sporadically and intermittently onto K-7's property, the summary judgment record fails to establish the opposite, continuing wrongful conduct and continuing injury.  
See Cook v. Exxon Corp.
, 145 S.W.3d 776, 785 (Tex. App.—Texarkana 2004, no pet.); 
see also Walton
, 65 S.W.3d at 275 (holding doctrine of continuing tort does not apply to injury to property); 
Loyd v. ECO Res., Inc.
, 956 S.W.2d 110, 127 (Tex. App.—Houston [14th
 Dist.] 1997, no pet.) (same).  We overrule K-7's third issue.

V. 
 
No Genuine Issues of Material Fact Exist as to Equitable 

Estoppel or Fraudulent Concealment

We also address whether K-7 raised a genuine issue of material fact regarding whether the doctrines of equitable estoppel or fraudulent concealment preclude Appellees from asserting limitations as a defense 
to its claims for damages to its property sustained 
prior to January 15, 2001.
  K-7 contends that it raised a genuine issue of fact as to whether Appellees are estopped from asserting the defense of limitations
 because Appellees’ actions and representations wrongfully induced K-7 to delay filing suit until after the limitations period expired.  

The doctrine of equitable estoppel is based on the principle that if one party by his conduct induces another to act in a particular manner, he should not be allowed to adopt an inconsistent position and thereby cause loss or injury to the other.  
Super Wash, Inc. v. City of White Settlement
, 131 S.W.3d  249, 260 (Tex. App.—Fort Worth 2004, pet. filed); 
Maguire Oil Co. v. City of Houston
, 69 S.W.3d 350, 367 (Tex. App.—Texarkana 2002, pet. denied).  Thus, equitable estoppel may bar a limitations defense when a party, his agent, or his representative makes representations that induce a plaintiff to delay filing suit until the limitations period has run.  
Vaughn v. Sturm-Hughes
, 937 S.W.2d 106, 108 (Tex. App.—Fort Worth 1996, writ denied).  

To invoke equitable estoppel in response to a motion for summary judgment on limitations grounds, the nonmovant must raise a fact issue that show the following:  (1) a false representation or concealment of a material fact; (2) the representation was made with knowledge or the means of knowledge of the true facts; (3) the representation was made to a party without knowledge or the means of knowledge of the true facts; (4) the representation was made with the intention that it would be acted on; and (5) the party to whom the representation was made relied on or acted on it to his or her prejudice.  
Id
. at 108-09.  When equitable estoppel is alleged in avoidance of a limitations defense, the failure to file suit must be “unmixed” with any want of diligence on the plaintiff’s part.  
Id
. at 109.

Fraudulent concealment is based on the doctrine of equitable estoppel, and where applicable, it likewise estops a defendant from asserting limitations as an affirmative defense.  
Mitchell Energy Corp. v. Bartlett
, 958 S.W.2d 430, 439 (Tex. App.—Fort Worth 1997, pet. denied). The doctrine of fraudulent concealment tolls or suspends the running of limitations because the defendant has concealed from the plaintiff facts necessary for the plaintiff to know that he has a cause of action against the defendant.  
DiGrazia v. Old
, 900 S.W.2d 499, 504 (Tex. App.—Texarkana 1995, no writ).  The estoppel effect ends, and the statute of limitations begins to run, when a plaintiff has knowledge of facts, conditions, or circumstances that would cause a reasonable person to make an inquiry, which, if pursued, would lead to discovery of the concealed cause of action, because such knowledge is the equivalent for limitations purposes of knowledge of the cause of action itself.  
Bayou Bend Towers Council of Co-Owners v. Manhattan Constr. Co.
, 866 S.W.2d 740, 747 (Tex. App.—Houston [14th Dist.] 1993, writ denied); 
Stephens v. James
, 673 S.W.2d 299, 303 (Tex. App.—Dallas 1984, writ ref’d n.r.e.).  In order to invoke the estoppel effect of fraudulent concealment, a plaintiff must show (1) the existence of the underlying tort; (2) the defendant’s knowledge of the tort; (3) the defendant’s use of deception to conceal the tort; and (4) the plaintiff’s reasonable reliance on the deception.  
Mitchell Energy Corp.
, 958 S.W.2d at 439. 

In the instant case, the summary judgment evidence reflects that when K-7 became aware of the first release of contaminants in early 1998, 
it immediately contacted PJ’s Convenience Stores, Inc.’s insurer, TOMIC, to discuss the contamination.  In his controverting affidavit, Koop explained that, during both 1998 and 1999, he had “numerous and repeated telephone conversations” with TOMIC regarding the contamination.  According to Koop, TOMIC represented that Jim Adams of Complete Earth Services (“CES”) had been hired to assess and to remediate K-7's property.  TOMIC also agreed to indemnify K-7's prospective purchaser for any damages associated with the release of contaminants from PJ’s #2.  In a letter dated January 12, 1999, 
TOMIC advised Koop that it would be responsible for “
Damages 
on account of 
Personal Injury
 or 
Property Damage
 for claims arising out of the 
Pollutant
 emanating from PJ’s #2.”

Thereafter, CES installed two wells on K-7's property to monitor the levels of contamination, and K-7 believed that Appellees were in the process of remediating the property.  Koop indicated that in February 2001, CES contacted him and requested permission to enter K-7's property to remove the monitoring wells because “the contamination levels were decreasing and the wells were no longer needed.”  According to Koop, he agreed to allow CES access to the property to remove the wells because he believed that the contamination on K-7's property was below state action levels at that time.  He further explained that he did not file suit against Appellees during that time due to the affirmative representations by TOMIC and CES that the property was being remediated and that the levels of contamination had decreased.  Until May 2002, K-7 was wholly unaware that its property had not been remediated or that a subsequent release of contaminants had occurred between December 1999 and March 2000.  At that time, K-7 discovered that in February 2001, two weeks prior to removing the wells, CES had taken samples from the wells and the levels of contamination had actually increased rather than decreased.  In addition, according to Koop, although CES was instructed by TNRCC to install two other monitoring wells on K-7's property in February 2001, CES never informed K-7 of this information until approximately a year-and-a-half later during the summer of 2002. 

Viewing the summary judgment evidence in the light most favorable to K-7, we conclude that K-7 possessed knowledge of facts that would make a reasonable person verify the contamination levels on its property after the alleged remediation and that would make a reasonable person verify that the leakage from the PJ’s #2 storage tanks had been solved.
 
 Although K-7 originally had knowledge of the contamination in February 1998 and delayed in filing suit based on affirmative actions and representations by Appellees and its agents indicating that K-7's “property was being remediated” and that “the levels of contamination had decreased,” K-7 nonetheless undisputedly possessed knowledge of facts that, if investigated, would have revealed K-7's cause of action against Appellees.  That is, K-7 knew its property had been contaminated, and therefore knew of its cause of action.  K-7 knew that TOMIC had hired CES to remediate the property, knew that CES was in communication with the TNRCC, and knew CES was removing the monitoring wells from the property.  K-7 did not attempt to verify the contaminant levels at the time CES removed the monitoring wells, but admits that the TNRCC conducted testing two weeks before the wells were removed and that results of this testing indicated the contamination levels had risen.  In short, K-7's reliance on CES’s representations were not reasonable under the circumstances.  
Accord Walton
, 65 S.W.3d at 275 (holding reliance on deception unreasonable after plaintiff knew of contamination).  Moreover, we question whether CES, a nonparty, had a duty to disclose any information to K-7; K-7's summary judgment evidence concerning fraudulent concealment and estoppel focuses on CES’s alleged deception, not Appellees.  
See Bayou Bend Towers
, 866 S.W.2d at 746 (holding plaintiff failed to meet fraudulent concealment burden because no evidence existed establishing a duty to disclose).  Thus, we hold that the doctrines of equitable estoppel and fraudulent concealment do not preclude Appellees’ limitations
 defense concerning damages occurring 
prior to January 15, 2001.  
We overrule K-7's fourth issue.

VI.  Conclusion

Having sustained K-7's first and second issues and having overruled K-7's third and fourth issues, we reverse the trial court’s summary judgment 
for Appellees foreclosing K-7's right of recovery for the successive injuries to its property occurring on or after January 15, 2001 and remand those claims to the trial court.  We affirm the trial court’s summary judgment for Appellees as to any injuries to the K-7 property occurring before January 15, 2001.

SUE WALKER

JUSTICE

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

DELIVERED:
 January 27, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.