In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-034 CV


____________________



ROYCE HOMES, L.P., d/b/a 


MICHAEL THOMAS ESTATE HOMES, Appellant



V.



RICHARD G. DYCK AND KATHRYN K. DYCK, Appellees






On Appeal from the 410th District Court


Montgomery County, Texas


Trial Cause No. 04-08-06521-CV






 MEMORANDUM OPINION 


 The central issue in this appeal is whether the appellees' claims are barred by the
statute of limitations. This case arises from a home builder's alleged installation of the
wrong windows in a new home. The jury found in favor of the home's purchasers. The
construction company appeals and contends that the statute of limitations bars the purchasers'
claims. Because we find that the purchasers failed to establish either the "discovery rule" or
"fraudulent concealment" exceptions to limitations, we reverse and render.

 Dr. Richard and Kathryn Dyck ("the Dycks") sued Royce Homes, L.P., d/b/a Michael
Thomas Estate Homes ("Royce"), the builder of their home, for damages under common law
fraud and breach of contract. The Dycks contended that Royce failed to install double-paned,
tinted windows ("promised windows") in the home they purchased. Royce raised limitations
and equitable estoppel as affirmative defenses. After finding in favor of the Dycks on their
contract and fraud causes, the jury awarded them damages, exemplary damages, and
attorney's fees.

 On appeal, Royce raises six issues. 


 Issue one contends that the evidence established Royce's statute of limitations
defense as a matter of law because the Dycks knew or should have known that
they did not receive the promised windows when they closed on their home in
February 1999. 
 Issue two asserts that the Dycks' claims are barred by the statute of limitations
and that neither fraudulent concealment nor the discovery rule preserve the
Dycks' claims. 
 Issue three claims there was no evidence or insufficient evidence that the
agreement between the Dycks and Royce required Royce to install the
promised windows. 
 Issue four alternatively argues that equitable estoppel excused Royce from
installing the double-paned, tinted windows and that the jury's finding to the
contrary was against the great weight and preponderance of the evidence.
 Issue five asserts that there was no evidence or insufficient evidence that
Royce committed fraud by non-disclosure (Jury Question Six) or fraud by
promising future performance (Jury Question Seven). 
 Issue six contends that the evidence of Royce's fraud is not clear and
convincing. 


Background


Design Features Sheet


 While shopping for a new home, the Dycks went to the Forest of Wedgewood
subdivision ("Wedgewood"). A Royce sales agent provided them with marketing material,
including a design features sheet used in particular Royce homes. At trial, the Dycks
introduced a design features sheet into evidence as plaintiff's exhibit five. Dr. Dyck testified
that exhibit five contained the design features for their Royce home. Included in the
document's "energy efficiency" section is a feature described as "Tinted Double Pane Glass
Windows with White or Bronze Frames." The Dycks testified that the Royce sales agent
used the design features sheet as a sales tool to explain how Royce would build the home. 

 George Kopecky, a Royce representative, agreed at trial that the design features sheet
could be used by customers to understand what features Royce homes have. However, Royce
disputed the Dycks' assertion that exhibit five was the design features sheet applicable to the
Dycks' home. 

Model Home


 The Dycks inspected a Royce model home prior to executing their earnest money
contract. This home had double-paned windows. While Dr. Dyck testified that they did not
notice whether the windows were "double-paned or single-paned" when they walked through
the model home, he also stated that they almost bought it because it was "exactly what [they]
wanted." Instead, they decided to "build a home exactly like [the model home], with a few
modifications[.]" Dr. Dyck understood the design features for the model home to be the ones
contained in exhibit five. He also testified that Royce, according to its sales agent, would
duplicate the model home for the Dycks.

The Earnest Money Contract


 The Dycks executed an earnest money contract on May 5, 1998. The Dycks agreed
to purchase and Royce agreed to sell the real estate and improvements identified by address,
12 Robin Trail, Conroe, Texas, and plan number, R324C. The Dycks' design features sheet
(plaintiff's exhibit 5), which is not attached to the earnest money contract, is neither dated
nor signed. In summary, whether the contract terms included tinted, double-paned windows
was a disputed issue. 

Walk-Through and Closing


 On January 26, 1999, the Dycks "walked through" the home to determine if it was
completed to their satisfaction. Prior to their arrival, the sales agent had identified problems
that he thought should be corrected. The "walk list" was already prepared when the Dycks
arrived for their tour. The Dycks walked through the home with the agent as he pointed out
the items that were on the list. Dr. Dyck testified that he made only one suggestion; he asked
for replacement of the dead grass in the front yard. The list does not contain any reference
to the windows. Below the itemized problems on the walk list is the following language: 
"Sign below the last item on this list when making the list. Sign below where indicated when
the home is acceptably completed." Dr. Dyck testified that at the time they signed the "walk
list," they believed the house was completed acceptably. During the walk through, Dr. Dyck
did not attempt to determine if items on the design features sheet had been properly
completed. On February 11, 1999, approximately two weeks after the walk through, the
Dycks and Royce closed on the house. 

Discovery of Single Pane Windows


 In August 2003, the Dycks hired Michael Arnett to construct an addition to their
home. When the Dycks requested that the addition include the same type of windows they
already had in their home, Arnett informed them that their windows were single-paned. Both
of the Dycks thought their home had double-paned windows.

Issue Two


 In issue two, Royce contends that the Dycks' claims are barred by the statute of
limitations and that neither fraudulent concealment nor the discovery rule preserve the
Dycks' claims. Royce further asserts that the evidence is legally and factually insufficient
to support the jury's findings in questions four and eight. In answering these two questions,
the jury found that in the exercise of reasonable diligence, the Dycks should have discovered
the installation defect by August 31, 2003.

 The statute of limitations for both fraud and breach of contract claims is four years.
See Tex. Civ. Prac. & Rem. Code Ann. § 16.004 (Vernon 2002). Statutes of limitations
generally begin running when a cause of action accrues unless there is some basis for
deferring accrual. Childs v. Haussecker, 974 S.W.2d 31, 36 (Tex. 1998). 

 While the parties in this case agree that the Dycks filed the lawsuit untimely, they 
disagree about whether the discovery rule or the doctrine of fraudulent concealment excused
the late filing. Royce asserts that limitations began to run on the Dycks' claims in February
1999 when the Dycks closed on their home and that their claims are barred by the four year
statute of limitations because they did not file their lawsuit until August 16, 2004. However,
the Dycks maintain the discovery rule and the doctrine of fraudulent concealment excuses
their failure to comply with the statutes of limitations.

The Discovery Rule


 The discovery rule exception defers accrual of a cause of action until the plaintiff
knew or, exercising reasonable diligence, should have known of the facts giving rise to the
cause of action. KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d
746, 749 (Tex. 1999). The jury determined that the Dycks, in the exercise of reasonable
diligence, did not discover the breach of contract or fraud until August 31, 2003. 

 The discovery rule is a limited exception to a statute of limitations, and the exception
applies only when the nature of the plaintiff's injury is both inherently undiscoverable and
objectively verifiable. Wagner & Brown, Ltd. v. Horwood, 58 S.W.3d 732, 734 (Tex. 2001).
The Dycks contend they were injured because Royce put the wrong windows in their home.
The jury found the Dycks and Royce agreed that tinted, double-paned glass windows would
be installed in the Dycks' home and that the Dycks suffered damages because Royce installed
untinted, single-paned windows ("installed windows") instead. Thus, the Dycks' installed
windows failed to conform to the contract in two respects: (1) they were not tinted; and (2)
they were not double-paned. 



Inherently Undiscoverable


 An injury is inherently undiscoverable if it is the type of injury that is unlikely to be
discovered within the prescribed limitations period, despite due diligence. Computer Assocs.
Int'l, Inc. v. Altai, Inc., 918 S.W.2d 453, 456 (Tex. 1996). Whether the specific plaintiffs in
a given case are able to discover their injury within the statutory period is not controlling. 
Horwood, 58 S.W.3d at 734-35. Rather, we must determine whether the defect is the type
that by its very nature falls into the category of being inherently undiscoverable, despite the
exercise of reasonable diligence. Id. at 735. 

 Because they sought to benefit from the discovery rule, the Dycks had the burden of
proof. Woods v. William M. Mercer, Inc., 769 S.W.2d 515, 518 (Tex. 1988). To satisfy their
burden, the Dycks had to show that the nature of their injury - that the windows were
untinted and single-paned - was inherently undiscoverable. In other words, the Dycks had
to show that the category of reasonably diligent homeowners would not have discovered the
windows did not conform to the contract's terms. If reasonably prudent homeowners would
discover that the windows, as installed, did not conform to the contract, then the particular
homeowner is deemed to have notice of injury that starts the limitations period. See
Schneider Nat'l Carriers, Inc. v. Bates, 147 S.W.3d 264, 279 (Tex. 2004) ("[A]ccrual occurs
upon notice of injury, even if the claimant does not yet know the full extent of damages or
the chances of avoiding them.").

Legal Sufficiency/Inherently Undiscoverable


 When a party challenges the legal sufficiency of evidence supporting an adverse
finding on an issue for which he did not have the burden of proof, he must demonstrate on
appeal that no evidence supports the adverse finding. See Croucher v. Croucher, 660 S.W.2d
55, 57 (Tex. 1983). Evidence is legally sufficient if it "would enable reasonable and fair-minded people to reach the verdict under review." City of Keller v. Wilson, 168 S.W.3d 802,
827 (Tex. 2005). We credit evidence that supports the verdict if reasonable jurors could, and
disregard contrary evidence unless reasonable jurors could not. Id.; Am. Interstate Ins. Co.
v. Hinson, 172 S.W.3d 108, 114 (Tex. App.-Beaumont 2005, pet. denied). We sustain legal
sufficiency challenges "when, among other things, the evidence offered to establish a vital
fact does not exceed a scintilla." Kroger Tex. Ltd. P'ship v. Suberu, 49 Tex. Sup. Ct. J. 592,
2006 WL 1195331, at *3 (May 5, 2006). "Evidence does not exceed a scintilla if it is 'so
weak as to do no more than create a mere surmise or suspicion' that the fact exists." Id.
(quoting Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004)).

 At trial, the Dycks had the burden to prove that the absence of tinting in the installed
windows was inherently undiscoverable. We first review the record to determine whether
there is legally sufficient evidence that reasonably prudent homeowners would not discover
that the installed windows were different from the promised windows.

 Two documents offered into evidence describe the windows to be used in the Dycks'
home. The design features sheet identifies the windows as "Tinted Double Pane Glass
Windows with White or Bronze Frames." The purchase order from Royce to Champion
Windows identifies the windows to be supplied to the Dycks' home as "SH DL Insul/White
Tinted." However, these documents do not show that reasonably prudent homeowners would
not discover that the installed windows were not tinted, double-paned windows.

 Turning to the testimony at trial, we likewise find no evidence to support the Dycks'
assertion that their injury due to the installation of non-conforming windows was inherently
undiscoverable. The Dycks' best evidence regarding a homeowner's ability to discover
whether a window contained tint comes from Michael Arnett, who testified about tinted
windows as follows:

 [Counsel] The concept of tinting windows, is every window that's built
and placed into a house these days tinted by placing an outside
tint on the glass?


 [Arnett] No.


 [Counsel] Is there a tint that's actually manufactured into the glass?


 [Arnett] Yes.

.

 [Counsel] Is it absolutely easy to distinguish whether a window has UV
tinting?


 [Arnett] No. In fact, it's - it's difficult to be able to see whether it's got
a tinting on it or not in some cases.


 [Counsel] Tell me what low E-tinting means.


 [Arnett] Low E is just a coating, protective coating that goes on the glass
or on the outside of the glass that stops the ultraviolet rays.


 [Counsel] Is it your belief that any 10-year-old child can look at a window
and tell if it had low E-tinting ?


 [Arnett] There is no way.


 [Counsel] When was low E-tinting available, first? 


 [Arnett] Oh, I don't know the date. I was putting low E-tinting in 20
years ago.


 This evidence supports an inference that in "some cases" it is difficult to determine
if a window is tinted. However, Arnett never stated that it would be difficult to determine
whether the installed windows were not tinted. The Dycks do not explain how Arnett's
testimony about UV tinting or low E-tinting is linked to the tinting that was supposed to be
in the promised windows. 

 On cross examination, Royce's counsel asked Arnett how he determined the Dycks'
windows were untinted. Arnett replied: "I didn't determine that. I just said they were not
insulated." Royce's counsel also asked Arnett to determine if the window offered as
defendant's exhibit nine was tinted. Arnett testified that it appeared to be tinted. But, Arnett
does not link this exhibit to the installed windows or the promised windows. Thus, Arnett's
testimony does not permit a reasonable inference that the tinting deficiency in the installed
windows was inherently undiscoverable. 

 The Dycks' testimony also provides no evidence that the lack of tinting in the
delivered windows was "inherently undiscoverable." Dr. Dyck testified that: (1) tinted
windows were not the only energy feature offered by Royce; (2) he apparently did not have
tinted windows in his home; (3) he did not know whether windows in his previous residence
were tinted; and (4) none of the documents he signed specified "double-pane tinted
windows." On cross-examination, Mrs. Dyck examined defense exhibit nine and testified
that she could see the tint on the window. 

 We conclude that at trial the Dycks did not meet their evidentiary burden to establish
that the untinted nature of the installed windows was inherently undiscoverable. Suberu,
2006 WL 1195331, at *3. There is no evidence, not even a scintilla, for a reviewing court
to credit in support of the verdict that Royce's installation of untinted windows was
inherently undiscoverable. See id.; City of Keller, 168 S.W.3d at 827. Based on the
foregoing, we find that the Dycks failed to meet their burden to prove the discovery rule tolls
the statute of limitations for their claims. (1)

Fraudulent Concealment


 The Dycks also contend that the doctrine of fraudulent concealment excused their
failure to timely file their suit. Royce disagrees. 

 The party asserting fraudulent concealment bears the burden of establishing the
doctrine. See Weaver v. Witt, 561 S.W.2d 792, 793 (Tex. 1977). "As a general rule, a failure
to disclose information does not constitute fraud unless there is a duty to disclose the
information." Bradford v. Vento, 48 S.W.3d 749, 755 (Tex. 2001). "Where a defendant is
under a duty to make disclosure but fraudulently conceals the existence of a cause of action
from the party to whom it belongs, the defendant is estopped from relying on the defense of
limitations until the party learns of the right of action or should have learned thereof through
the exercise of reasonable diligence." Borderlon v. Peck, 661 S.W.2d 907, 908 (Tex. 1983);
see also Velsicol Chem. Corp. v. Winograd, 956 S.W.2d 529, 531 (Tex. 1997). Duty, thus,
is a threshold determination for applying the doctrine of fraudulent concealment. See
Borderlon, 661 S.W.2d at 908.

Duty to Disclose
 

 Royce argues that it had no duty to disclose the type of windows installed in the
Dycks' home. Royce maintains that the windows were fully visible and that a simple visual
inspection was all that was necessary to discover that the windows were untinted and single-paned. Royce asserts that nothing it did or could have done prevented the Dycks from
discovering the type of windows installed in their home. The Dycks contend that Royce
maintained an "improper silence" about the installation.

 Silence may be equivalent to a false representation only when the particular
circumstances impose a duty on the party to speak and he deliberately remains silent.
Bradford, 48 S.W.3d at 755. Whether such a duty exists is a question of law. Id. In Texas,
a "seller of real estate is under a duty of disclosing material facts which would not be
discoverable by the exercise of ordinary care and diligence on the part of the purchaser, or
which a reasonable investigation and inquiry would not uncover." Smith v. Nat'l Resort
Communities, Inc., 585 S.W.2d 655, 658 (Tex. 1979); Pairett v. Gutierrez, 969 S.W.2d 512,
515 (Tex. App.-Austin 1998, pet. denied). "'Material' means a reasonable person would
attach importance to and would be induced to act on the information in determining his
choice of actions in the transaction in question." Robbins v. Capozzi, 100 S.W.3d 18, 24
(Tex. App.-Tyler 2002, no pet.). "Ordinary care" means the degree of care that would be
used by persons of ordinary prudence under the same or similar circumstances. See Dickson
v. J. Weingarten, Inc., 498 S.W.2d 388, 391(Tex. Civ. App-Houston [1st Dist.] 1973, no
writ). "Reasonable inquiry means the amount of examination that is reasonable under the
circumstances of the case." Monroe v. Grider, 884 S.W.2d 811, 817 (Tex. App.-Dallas
1994, writ denied).

 At trial, the Dycks had the burden to show that a reasonable investigation and inquiry
would not have caused them to discover that their windows were untinted. See Weaver, 561
S.W.2d at 793. We previously reviewed the evidence regarding the untinted nature of the
Dycks' windows. That evidence did not show the windows' untinted condition to be 
undiscoverable. Further, with respect to the only tinted window introduced as a trial exhibit,
Mrs. Dyck testified that she could see the tint. 

 Under Smith, 585 S.W.2d at 658, a seller of real estate has no duty to disclose facts
that a buyer would discover during a reasonable investigation. Because the Dycks failed to
show that a reasonable investigation would not disclose that the installed windows were
untinted, they failed to prove that Royce was under a duty to disclose the specifics of the
installed windows under the circumstances here. Absent a duty to disclose, the fraudulent
concealment doctrine does not apply. See Borderlon, 661 S.W.2d at 908. 

 We sustain issue two. We hold that the statute of limitations bars the claims asserted
by the Dycks. The trial court's judgment is reversed and rendered in favor of Royce.

 REVERSED AND RENDERED.

 ___________________________

 HOLLIS HORTON

 Justice


Submitted on July 27, 2006

Opinion Delivered November 2, 2006

Before McKeithen, C.J., Gaultney and Horton, JJ.
1. The Dycks failed to establish the first element of the discovery rule - that their injury
was inherently undiscoverable. Thus, we need not consider the discovery rule's second
element - that the defect be objectively verifiable. See Horwood, 58 S.W.3d at 734.