**Affirmed and Majority and Dissenting Opinions filed August 4, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00343-CV

## VINCENT LILLY, Appellant

## V.

## TEXAS DEPARTMENT OF CRIMINAL JUSTICE AND BILL PIERCE, Appellees

### On Appeal from the 412th District Court
### Brazoria County, Texas
### Trial Court Cause No. 74682I

## O P I N I O N

Appellant Vincent Lilly appeals from the trial court's order granting summary judgment in favor of appellees the Texas Department of Criminal Justice (TDCJ) and Bill Pierce based on limitations. We affirm.

### BACKGROUND

According to his petition, Lilly is a member of the House of Yahweh, a religion that prohibits its members from eating pork and using cooking or eating utensils that have been used to prepare and serve pork. The TDCJ imprisoned Lilly from February 2011 until June 2013 at its Stringfellow Unit, where it

operates a kosher kitchen in full compliance with Lilly's dietary restrictions. On March 16, 2011, Lilly requested that his name be added to the Stringfellow Unit's kosher kitchen list. Rabbi Goldstein, who maintained the list, denied Lilly's request, stating: "Per TDCJ policy, [t]he kosher kitchen is restricted to the Jewish community only."

Lilly filed a Step 1 offender grievance form on March 24, 2011, complaining that the TDCJ's failure to provide him a kosher diet violated his constitutional rights. Lilly requested that, to resolve his complaint, the TDCJ add his name to the kosher kitchen list. The warden responded to Lilly's grievance on April 27, 2011, stating: "Your grievance has been reviewed. In order to address your concerns appropriately, the unit Chaplain has submitted HQ150 form to the Religious Practice Committee in Huntsville. Wait for their disposition."

Lilly filed a Step 2 offender grievance form on June 8, 2011.[1] Lilly asserted on his form that he was dissatisfied with the TDCJ's resolution of his Step 1 offender grievance form because more than 40 days had elapsed since the warden's response and the Religious Practice Committee had not returned its decision. Pierce, who was the director of the TDCJ's Chaplaincy Department, responded to Lilly's Step 2 offender grievance form on June 24, 2011, stating: "Your complaint has been received and investigated. Your grievance was answered appropriately in Step 1. The Religious Practice Committee (RPC) has your request and it is scheduled for review the next time they meet on June 24, 2011. The RPC meets every 90 days. No further action is warranted at this time."

Lilly filed additional grievances over the next several months by submitting

---

[1] The Step 2 offender grievance form lists the date received as June 8, 2011. Lilly alleges that he filed his grievance form on June 7, 2011. The exact date is not dispositive of this appeal. We state the date listed on the grievance form as the date Lilly filed his grievance and resolve similar discrepancies in the same manner by stating the dates listed on the grievance forms.

Step 1 and Step 2 offender grievance forms. On July 25, 2011, Lilly filed a grievance complaining that the TDCJ did not provide him with adequately sanitized eating utensils for his kosher diet; he requested that he be allowed to bring his commissary-purchased bowl, cup, and spoon to the dining hall. Lilly filed another grievance on August 25, 2011, complaining that he had observed kitchen staff serve non-Jewish inmates and officers kosher meals on disposable trays; Lilly requested that he be provided the TDCJ's Kosher Kitchen Policy for review. Lilly filed a fourth grievance on December 5, 2011, complaining that his dietary requirements had not been met; he requested "[d]isposable eating ware and cooking ware where no [p]ork has been used, in comports with my religious belief, like Judaic faith [o]ffenders."

The TDCJ responded to Lilly's additional grievances stating in its various Step 1 and Step 2 replies that Lilly could not bring his personal items to the dining hall; "utensils, trays (plates) and cups [were] adequately cleaned and sanitized to remove all contamination of pork or any other food items served in the Offender Dining Hall;" and "[t]he Administration ha[d] no plans of providing disposable eating wares for offenders." The TDCJ did not provide its Kosher Kitchen Policy to Lilly for review.

Lilly received the Religious Practice Committee's disposition regarding his first-filed grievance on February 1, 2012. According to Lilly, the committee stated: "The [p]ork-free/[m]eat-free meals provided by the Agency meets [*sic*] the requirements of the scriptures you presented."

Lilly wrote Pierce regarding the committee's interpretation of scriptures after receiving the committee's disposition. Lilly questioned why Jewish inmates, relying on the same scriptures, were provided the kosher diet Lilly requested. Pierce did not respond to Lilly's letter.

3

Lilly resumed filing grievances. On July 16, 2012, Lilly complained that the Stringfellow Unit's Kosher Kitchen Policy was discriminatory and requested permission to read the policy. Pierce responded on March 1, 2013: "You present no new facts for consideration. You may request to read the Kosher Kitchen [P]olicy through the Open Records Act. No further action is warranted."

Lilly filed another grievance on March 20, 2013, citing the Texas Religious Freedom Restoration Act section 110.006(g), and requesting that Pierce provide the Religious Practice Committee's rationale "as to why the Scriptures cited does [*sic*] not prohibit eating from utensils contaminated by [p]ork." *See* Tex. Civ. Prac. & Rem. Code § 110.006(g) (Vernon 2011). Pierce responded on April 26, 2013: "The pork-free/meat[-]free meals provided by TDCJ meet the requirements of the scriptures you have provided."

Lilly sent an open records request to the Stringfellow Unit's law library supervisor on April 1, 2013, to review the Kosher Kitchen Policy. The law library supervisor denied Lilly's request. Lilly filed a Step 1 offender grievance form on April 1, 2013, complaining that the law library supervisor had disregarded Lilly's request that he be allowed to review the Kosher Kitchen Policy. The warden responded to Lilly's Step 1 offender grievance form on May 10, 2013, stating: "Your grievance has been reviewed . . . . Offenders are not allowed to have copies or review the policy requested for. No further action warranted." Lilly filed a Step 2 offender grievance offense form on May 15, 2013. The warden rescinded his Step 1 response, and provided the following corrected Step 1 response: "Regarding your request to review the Kosher [K]itchen Policy. The Policy[,] Reassignment Procedures to a Jewish Designated Unit[,] is in the Chaplaincy Manual, policy number 07.02. You may review this policy in the Unit Law Library."

The TDCJ transferred Lilly from the Stringfellow Unit to the James Allred

4

Unit in June 2013. At the time of his transfer, Lilly had not received the TDCJ's response to his May 15, 2013 Step 2 offender grievance form. Lilly filed a separate grievance complaining that he had not received the TDCJ's response. The TDCJ provided Lilly a copy of its Step 2 response on September 30, 2013. The TDCJ's response stated: "Your grievance was investigated and disclosed that offenders are permitted to review the Kosher Diet [P]olicy in the law library. Submit an I-60 to the law library. No further action warranted."

Lilly reviewed the Chaplaincy Manual policy number 07.02 and determined, according to his petition, that "[t]his policy ha[d] 'nothing whatsoever' to do with the Stringfellow Unit Kosher Kitchen." Lilly also determined that the TDCJ's response to his May 15, 2013 Step 2 offender grievance form was "'irrelevant', for [Lilly] [was] requesting to review the Kosher Kitchen Policy[,] which states the Stringfellow Unit Kosher Kitchen is restricted to the Jewish community[,] not the Kosher Diet Policy."

Lilly filed a lawsuit against the TDCJ and Pierce on October 22, 2013.[2] Lilly alleged in his petition that appellees' actions "substantially burdened his free exercise of religion to use '[p]ork-free' cooking and eating utensils in the preparation and serving of his daily meals in comports [sic] with his religious requirement [sic]." Lilly asserted claims under the Texas Religious Freedom Restoration Act, the First and Fourteenth Amendments to the United States Constitution, and Article 1, sections 3a and 6 of the Texas Constitution. *See* Tex. Civ. Prac. & Rem. Code § 110.003 (Vernon 2011).[3]

---

[2] We deem Lilly's lawsuit to have been filed on October 22, 2013, because, on that date, Lilly placed his pro se petition, addressed to the trial court clerk, in the prison mail system. *See Warner v. Glass*, 135 S.W.3d 681, 684 (Tex. 2004).

[3] Lilly does not discuss his claims under the Texas Constitution in his appellate brief. To the extent Lilly complains that the trial court erred in dismissing claims under the Texas Constitution, we reject this contention as being inadequately briefed. *See* Tex. R. App. P. 38.1(i)

Appellees answered and moved for traditional summary judgment on all of Lilly's claims, arguing that his claims were barred by the applicable statutes of limitations. Appellees asserted that Lilly's federal constitutional claims were subject to a two-year limitations period and Lilly's Texas Religious Freedom Restoration Act claim was subject to a one-year limitations period. Appellees calculated that the limitations periods ran from June 24, 2011, when Lilly received the TDCJ's response to his first Step 2 offender grievance form, and asserted that his claims were barred by the statutes of limitations when filed on October 22, 2013.

Lilly argued in his summary judgment response that his claims accrued on February 1, 2012, when he received the Religious Practice Committee's decision regarding his first-filed grievance. Lilly also "pl[ed] the Doctrine of Fraudulent Concealment, as his affirmative defense to the Statute of Limitations . . . because of the '[d]eceptive methods' employed by [appellees] to impede [Lilly] from challenging the [Kosher Kitchen Policy], which [he] discovered was non-reviewable by inmates on May 10, 2013." Lilly argued that, pursuant to the Texas Religious Freedom Restoration Act section 110.006(g), appellees had a duty to provide their rationale for imposing a substantial burden on his free exercise of religion. Thus, according to Lilly:

> Where a defendant is under a duty to make disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence. BORDERLON v. PECK, 661 S.W.2d 907, 908 (Tex. 1983);[4] see

("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

[4] While *Borderlon* stated this standard, it remanded the case to the trial court to consider the issue of fraudulent concealment. *See Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1983); *see also id.* at 908-09 (doctrine of fraudulent concealment was not abolished by statute in

6

also TEX. CIV. PRAC. & REM. CODE § 110.006(g). Consequently, the Defendants will not be permitted to avail themselves of the protection of the statute of limitations because by their own fraud [trying to conceal a discriminatory policy from review by inmates as a means of impeding the policy from being challenged] they have prevented Plaintiff from seekign [*sic*] redress within the period of limitations. To reward a wrongdoer of his own fraudulent contrivances would make the statute a means of encouraging rather than preventing fraud. Id. at 909.

(first set of brackets in the original).

The trial court granted summary judgment in favor of appellees on all of Lilly's claims based on the statutes of limitations. Lilly requested findings of facts and conclusions of law, which the trial court denied. Lilly then timely appealed, challenging the trial court's order granting summary judgment and the court's refusal to sign findings of facts and conclusions of law.

## ANALYSIS

### I. Summary Judgment[5]

We review a summary judgment *de novo*. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact and that judgment should be granted as a matter of

---

medical malpractice cases).

[5] We liberally construe Lilly's pro se pleadings (just as we liberally construe all litigants' pleadings) but we hold him to the same standards as a licensed attorney. *See Nabelek v. Bradford*, 228 S.W.3d 715, 717 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Lilly contends on appeal that the trial court erred in granting summary judgment, and he identifies specific arguments in support of this contention that are addressed in the majority opinion. Lilly did not raise the arguments advocated in the dissenting opinion. Therefore, we do not address them. "A court of appeals commits reversible error when it sua sponte raises grounds to reverse a summary judgment that were not briefed or argued in the appeal." *Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 916 (Tex. 2015) (citing *San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 209–10 (Tex. 1990) (per curiam)). Reversing on the grounds advocated by the dissenting opinion would run afoul of this precept.

law.  Tex. R. Civ. P. 166a(c); *Shah v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001).  In conducting our review, we take as true all evidence favorable to the nonmovant, and we make all reasonable inferences in the nonmovant's favor.  *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

When a defendant moves for summary judgment on the basis of an affirmative defense such as limitations, it has the burden to conclusively prove all the elements of the affirmative defense as a matter of law.  *Id.*  A defendant who moves for summary judgment based on the statute of limitations must (1) conclusively prove when the cause of action accrued; and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury.  *Id.*  If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue to avoid the statute of limitations.  *Id.*

The parties do not disagree about the applicable limitations periods.  Lilly brought his federal constitutional claims pursuant to 42 U.S.C. section 1983, which provides a cause of action for deprivations of federal constitutional rights under color of state law.  *See* 42 U.S.C.A. § 1983 (West 2012); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-33 (1986).  Congress did not provide a statute of limitations or a body of tolling rules applicable to section 1983 claims; therefore, courts considering such claims apply the forum state's statute of limitations for personal-injury torts and tolling rules unless the applicable statute of limitations or tolling rules would be inconsistent with federal law.  *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Bd. of Regents v. Tomanio*, 446 U.S. 478, 483-86 (1980); *Li v. Univ. of Tex. Health Sci. Ctr. at Houston*, 984 S.W.2d 647, 651 (Tex. App.—Houston [14th

Dist.] 1998, pet. denied). Lilly does not contend that the applicable Texas statute of limitations or tolling rules are inconsistent with federal law. In Texas, the limitations period for a personal-injury tort is two years; therefore, the limitations period for a section 1983 cause of action in Texas is two years. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon Supp. 2014); *see also Li*, 984 S.W.2d at 651.

Lilly also asserts a claim under the Texas Religious Freedom Restoration Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 110.003. The act prohibits a government agency from substantially burdening a person's free exercise of religion, with certain exceptions. *See id.* § 110.003(a), (b). The statute of limitations for a claim brought under the Religious Freedom Restoration Act is one year from "the date the person knew or should have known of the substantial burden on the person's free exercise of religion." *Id.* § 110.007(a) (Vernon 2011).

Lilly does not assert that the discovery rule applied to delay the accrual of his causes of action; therefore, we do not consider the rule's application to this case. *See KPMG*, 988 S.W.2d at 748; *cf. Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001) ("We have described the discovery rule as 'a very limited exception to statutes of limitations,' and have condoned its use only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable.") (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996)).

## A.    Inmate Grievance System

In his first issue, Lilly contends that his causes of action did not accrue and the limitations periods did not begin to run until he was authorized to seek a judicial remedy, which occurred only after he received the Religious Practice

Committee's disposition on February 1, 2012.[6]  Lilly states:  "Since [Lilly] is confined in the TDCJ, Texas Government Code (TEX. GOVT. CODE) mandate [*sic*] that he seek his judicial remedy after he receives a written decision from the highest authority provided for in the grievance system."  Lilly cites Texas Government Code section 501.008(d)(1) for his proposition.  He does not cite or address section 501.008(d)(2).

Texas Government Code section 501.008(d) provides, in full:

An inmate may not file a claim in state court regarding operative facts for which the [TDCJ] grievance system provides the exclusive administrative remedy until:

(1) the inmate receives a written decision issued by the highest authority provided for in the grievance system; or

(2) if the inmate has not received a written decision described by Subdivision (1), the 180th day after the date the grievance is filed.

Tex. Gov't Code Ann. § 501.008(d) (Vernon 2012).

Texas Government Code section 501.008(e) provides:

The limitations period applicable to a claim arising out of the same operative facts as a claim for which the grievance system provides the exclusive remedy:

---

[6] Lilly asserts in his appellate brief:

Normally, [Lilly's] causes of action would have accrued on February 1, 2012, because that was the date he received [n]otice from the highest authority provided for in the grievance system, the [Religious Practice Committee], denying his request on Step 1 grievance #2011124533 [*i.e.*, Lilly's first Step 1 offender grievance form, filed on March 24, 2011], to receive his daily pork-free meals from the kosher kitchen in comports with his religious requirement.  Thus [Lilly's] Texas Religious Freedom Restoration Act claim was due 'one-year' from the February 1, 2012 date, on February 1, 2013.  Likewise, his Title 42 United States Code Section 1983 claim was due 'two-years' from February 1, 2012, on February 1, 2014.

10

> (1) is suspended on the filing of the grievance; and
>
> (2) remains suspended until the earlier of the following dates:
>
>> (A) the 180th day after the date the grievance is filed; or
>>
>> (B) the date the inmate receives the written decision described by Subsection (d)(1).

*Id.* § 501.008(e) (Vernon 2012).

Lilly filed his first grievance on March 24, 2011, complaining that the TDCJ failed to provide him a kosher diet and that Rabbi Goldstein refused to add his name to the kosher kitchen list. The warden responded to Lilly's grievance, stating: "Your grievance has been reviewed. In order to address your concerns appropriately, the unit Chaplain has submitted HQ150 form to the Religious Practice Committee in Huntsville. Wait for their disposition." Lilly escalated his first grievance by filing a Step 2 offender grievance form, to which Pierce responded on June 24, 2011: "Your complaint has been received and investigated. Your grievance was answered appropriately in Step 1. The Religious Practice Committee (RPC) has your request and it is scheduled for review the next time they meet on June 24, 2011. The RPC meets every 90 days. No further action is warranted at this time."

The TDCJ's Step 1 and Step 2 responses to Lilly's grievance forms arguably suggest that the Religious Practice Committee was the "highest authority provided for in the grievance system." *See id.* § 501.008(d)(1). Appellees dispute that the Religious Practice Committee was the highest authority provided for in the grievance system, but did not provide summary judgment evidence conclusively establishing that another person or entity was the highest authority. We need not decide that question, however, because in any event, Lilly was authorized under section 501.008(d)(2) to seek a remedy in state court on September 20, 2011 —

11

which is the 180th day after he filed his grievance — regardless of section 501.008(d)(1)'s operation.

Likewise, the limitations periods for Lilly's causes of action as alleged began to run, at the latest, on September 20, 2011, pursuant to Texas Government Code section 501.008(e)(2)(A), regardless of whether Lilly had received a written decision from the highest authority provided for in the grievance system. Therefore, Lilly's claims were barred by the applicable one-year and two-year statutes of limitations when Lilly filed his lawsuit on October 22, 2013, unless the limitations periods were otherwise tolled. *See* Tex. Civ. Prac. & Rem. Code Ann. § 110.007(a); *id.* § 16.003(a); *Wallace*, 549 U.S. at 387; *Li*, 984 S.W.2d at 651. We overrule Lilly's first issue.

## B.    Fraudulent Concealment Doctrine

In his second issue, Lilly contends that the doctrine of fraudulent concealment tolled the limitations periods until May 10, 2013. He asserts:

> [Lilly] plead [*sic*] the Doctrine of fraudulent concealment to the bar of the statutes of limitations defense of [appellees]. Fraudulent concealment tolls an action's accrual period until plaintiff learned [*sic*] of, or should have discovered, the deceitful conduct or facts giving rise to his causes of action. The [TDCJ] established a 'policy' that only the Judaic inmates could use the kosher kitchen without a legitimate penological interest, and[,] as a means to keep other religious inmates from challenging the policy as favoring the Judaic religion, mandated that the policy is not reviewable by inmates. The policy was applied to [Lilly] to deny him his request to eat from the kosher kitchen, when [Lilly] requested to review the policy to see if it actually excluded him, not knowing the policy was non-reviewable by inmates; [Pierce], in concert with other prison officials, used deceit to keep the knowledge the policy was non-reviewable by inmates secret, by giving [Lilly] false information or ignoring his request to review the policy, and applying a 'double-standard' to [Lilly's] scriptural authority, as a means to keep from revealing the kitchen was restricted to the Judaic religion.

12

On May 10, 2013, [Lilly] was inadvertently informed the policy was non-reviewable by inmates. To which [Lilly] was then given more false and misleading information to try to cover the revelation, by [Pierce] and other prison officials. Thus, [Lilly's] accrual date should commence from the date of the discovery of the fraud; and timely filed [*sic*] once he received his Step 2 grievance back on October 11, 2013,[7] which he filed on October 22, 2013. Because the 'Kosher Kitchen Policy' is what this case is predicated on, which was fraudulently concealed.

Additionally, Lilly argues that appellees had a duty to disclose their rationale for imposing a substantial burden on Lilly's free exercise of religion. He cites Texas Religious Freedom Restoration Act section 110.006(g), which provides:

In dealing with a claim that a person's free exercise of religion has been substantially burdened in violation of this chapter, an inmate grievance system, including an inmate grievance system required under Section 501.008, Government Code, must provide to the person making the claim a statement of the government agency's rationale for imposing the burden, if any exists, in connection with any adverse determination made in connection with the claim.

Tex. Civ. Prac. & Rem. Code Ann. § 110.006(g).[8]

Lilly contends:

[T]he doctrine of fraudulent concealment provides that where a defendant is under a duty to make disclosure but fraudulent [*sic*] conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence. See

---

[7] Lilly refers to his May 15, 2013 Step 2 offender grievance form, the response to which Lilly received after he transferred from the Stringfellow Unit to the James Allred Unit. It is unclear whether Lilly received the Step 2 grievance response on September 30, 2013, as the grievance form states, or October 11, 2013, as Lilly asserts in his appellate brief. The exact date Lilly received the response is not dispositive of this appeal.

[8] Section 110.006(g) does not purport to toll any limitations period until an inmate receives the government agency's rationale. *See id.*; *see also id.* § 110.005 (Vernon 2011) ("This chapter does not affect the application of Section . . . 501.008, Government Code.").

Moreno v. Sterling Drug, Inc., 787 S.W.2d 348, 351-52 n.4 (Tex. 1990).

While the *Moreno* court stated this standard, it expressed no opinion on the doctrine's applicability to the case. *See Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 352 n.1 (Tex. 1990).

### 1. Discussion

Fraudulent concealment tolls the statute of limitations after a cause of action accrues. *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011). The elements of fraudulent concealment are: (1) existence of an underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception. *Markwardt v. Tex. Indus., Inc.*, 325 S.W.3d 876, 895 (Tex. App.—Houston [14th Dist.] 2010, no pet.). "'The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action.'" *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 623 (Tex. 2011) (quoting *Borderlon v. Peck,* 661 S.W.2d 907, 909 (Tex.1983)). Assuming for argument's sake that the fraudulent concealment doctrine applies here as asserted by Lilly, the doctrine could not forestall summary judgment.

Texas Religious Freedom Restoration Act section 110.006(g) required the TDCJ to provide a statement of its rationale for imposing a burden, if any existed, in connection with an adverse decision made in connection with Lilly's free exercise of religion claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 110.006(g). Arguably, the TDCJ's grievance system did not provide such a statement.[9]

---

[9] Pierce's response on June 24, 2011, to Lilly's Step 2 offender grievance form — which appellees assert was a final decision — stated that Lilly's request was referred to the Religious Practice Committee; Pierce's response did not purport to offer a rationale as described by section

14

Nevertheless, appellees' alleged concealment of their section 110.006(g) statement of rationale did not conceal Lilly's causes of action. As alleged, Lilly's Religious Freedom Restoration Act claim and section 1983 claims were based on appellees' denials of a kosher diet to Lilly and appellees' refusal to add Lilly's name to the kosher kitchen list. Lilly knew that he was denied a kosher diet and knew that he had been rejected from the kosher kitchen list as early as March 2011, when Rabbi Goldstein denied Lilly's request to be added to the list and Lilly first filed a grievance. Appellees' "deceit," if any, did not conceal these facts underlying Lilly's causes of action; therefore, we determine that Lilly did not raise a fact issue regarding the doctrine of fraudulent concealment. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 209 (Tex. 2011) (the doctrine of fraudulent concealment did not toll the limitations period where plaintiff had "actual knowledge of alleged injury-causing conduct"); *cf. Etan Indus., Inc.*, 359 S.W.3d at 623 (the estoppel effect of defendant's presumed fraudulent concealment ended when plaintiffs were appraised of facts, conditions, and circumstances sufficient to cause a reasonable person to make inquiry that would lead to the discovery of the concealed cause of action.). We overrule Lilly's second issue.

We hold that the trial court properly granted summary judgment in appellees' favor on all of Lilly's claims based on the statutes of limitations.[10]

## II.    Findings of Fact and Conclusions of Law

In his third issue, Lilly contends that the trial court erred in refusing to sign

---

110.006(g). Lilly does not explain why he would be entitled to review the Kosher Kitchen Policy under section 110.006(g).

[10] We do not reach Lilly's issue that the trial erred in granting summary judgment based on the Prison Litigation Reform Act section 1997e(e) because we determine that the court correctly granted summary judgment based on the statutes of limitations. *See* 42 U.S.C.A. § 1997e(e) (West 2012); Tex. R. App. P. 47.1.

findings of fact and conclusions of law upon his request. Findings of fact and conclusions of law "'have no place' in a summary judgment proceeding [because] for summary judgment to be rendered, there cannot be a 'genuine issue as to any material fact', Tex. R. Civ. P. 166a(c), and the legal grounds are limited to those stated in the motion and response, *Stiles v. Resolution Trust Corp.,* 867 S.W.2d 24, 26 (Tex. 1993)." *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997). We reject Lilly's third issue.

## CONCLUSION

Having rejected Lilly's issues that the trial court erred in granting summary judgment in favor of appellees based on the statutes of limitations and in denying Lilly's request for findings of fact and conclusions of law, we affirm the trial court's judgment.


/s/     William J. Boyce
        Justice


Panel consists of Chief Justice Frost and Justices Boyce and McCally. (Frost, C.J., dissenting).