**Opinion issued July 9, 2019**



In The

# Court of Appeals

For The

## First District of Texas

————————————

### NO. 01-18-00661-CV

————————————

**COURTNEY SANDERS, INDIVIDUALLY, AND AS DEPENDENT ADMINISTRATOR OF THE ESTATE OF WILLIAM PAUL BROWN, Appellant**

**V.**

**CHARLOTTE HATHAWAY, Appellee**

---

**On Appeal from the 239th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 87060-CV**

---

## MEMORANDUM OPINION

Appellant Courtney Sanders, Individually, and as Dependent Administrator

of the Estate of William Paul Brown, appeals from the trial court's order granting

summary judgment in favor of appellee, Charlotte Hathaway, on Sanders's causes of action for common law fraud, fraudulent inducement, breach of fiduciary duty, and to set aside contracts. In two issues, Sanders contends that the trial court erred in granting summary judgment on her claims because (1) a fact issue exists with regard to her claims of lack of mental capacity and undue influence and (2) the discovery rule and fraudulent concealment doctrine tolled the accrual of her causes of action. We affirm.

## Background

Sanders and Hathaway are sisters and the daughters of William Paul Brown. Brown died on September 10, 2010.

On June 10, 2016, Sanders filed suit against Hathaway asserting causes of action for conversion, tortious interference with inheritance rights, fraudulent inducement, common law fraud, breach of fiduciary duty. Sanders also sought to set aside any distributions or transfers of, or change of beneficiary designations regarding, real or personal property owned by Brown after January 2009 based on Brown's alleged lack of mental capacity to contract and undue influence exerted over him by Hathaway. On November 16, 2016, Sanders filed her first amended petition, omitting her conversion claim.

2

On November 3, 2017, Hathaway filed her first no-evidence motion for summary judgment and second traditional motion for summary judgment.[1] Sanders filed her response to the motions on November 21, 2017. The summary judgment evidence before the trial court, which included the transcripts of Sanders's and Hathaway's depositions, Hathaway's affidavit, certified copies of the deeds, and Brown's medical records, showed the following:

- Prior to his death, Brown lived alone in a trailer on his property. Hathaway lived in a nearby mobile home on Brown's property and Sanders lived more than 300 miles away.

- Brown had a long history of heavy alcohol use and suffered from jaundice and cirrhosis of the liver. In addition to taking the pain medication, Darvon, Brown took Oxycontin during a two-week period in April or May 2010. When the Oxycontin caused him to hallucinate, Brown stopped taking the medication.

- On March 17, 2010, approximately six months before he died, Brown changed the beneficiary designations on three of his four insurance policies, naming Hathaway as sole beneficiary ("beneficiary changes"). On his fourth policy, Sanders and Hathaway remained co-beneficiaries.

- On March 17, 2010, Brown also executed four warranty deeds transferring his real property to Hathaway ("deeds"). The deeds, which were signed and notarized, were recorded in the property records of Brazoria County.

- Five days later, on March 22, 2010, Brown executed documents at his financial institution, the Associated Credit Union, making his checking, savings, and share certificates accounts payable on death to Hathaway

---

[1] Hathaway previously filed a traditional motion for summary judgment which was denied on January 24, 2017.

3

("payable on death accounts"). The beneficiary changes, deeds, and payable on death accounts disposed of all of Brown's property except for household furnishings and personal effects.

- Sanders typically visited Brown four times a year and, in 2010, visited him twice. According to Sanders, Brown was able to care for himself, including feeding and dressing himself.

- In 2010, Hathaway visited Brown every day for approximately two hours, ensured that he took his medication, accompanied him to his doctor visits, made sure he had groceries, and occasionally cooked for him.

- When several of his friends passed away, Brown told Hathaway that he wanted to get his legal affairs in order. Brown, who could not type, sat next to Hathaway and gave her instructions while she created a declaration of trust and durable power of attorney using a will maker computer program. It is undisputed that the trust was never funded.

- On September 10, 2010, Brown died. On September 11, 2010, Hathaway told Sanders that their father had passed away.

- On September 12, 2010, two days after Brown's death, Hathaway told Sanders that Brown did not have much when he passed away, and that what little remained he left to Hathaway in a trust.

- Sanders knew that she and Hathaway were to receive $10,000 each in life insurance proceeds but she did not know anything about Brown's financial situation. Sanders also knew prior to Brown's death that he had some property, but she did not know the nature and extent of it.

- In March 2014, Sanders learned from her uncle that Brown had assets worth approximately $1,000,000 before he died.

- On June 6, 2014, Sander's attorney sent a letter to Hathaway requesting documentation concerning Brown's deed transfers, beneficiary designations on his life insurance policies, and bank accounts.

4

- On September 9, 2014, Sanders applied for the administration of Brown's estate.

Following a hearing, the trial court granted Hathaway's no-evidence and traditional summary judgment motions on June 26, 2018. On July 25, 2018, Sanders filed a motion for new trial which was overruled by operation of law. This appeal followed.

## Discussion

On appeal, Sanders contends that the trial court erred in granting summary judgment on her claims because (1) a fact issue exists with regard to her claims of lack of mental capacity and undue influence, (2) the discovery rule and doctrine of fraudulent concealment tolled the accrual of her causes of action, and (3) the evidence is sufficient to create a fact issue on her claims of common law fraud and breach of fiduciary duty.

### A. Standard of Review

We review a trial court's grant of summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When reviewing a summary judgment motion, we must (1) take as true all evidence favorable to the nonmovant and (2) indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). If a trial court grants summary judgment without specifying the grounds for

5

granting the motion, we must uphold the trial court's judgment if any one of the grounds in the motion is meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

In a traditional summary judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

In a no-evidence motion for summary judgment, the movant asserts that there is no evidence to support an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to each of the elements specified in the motion. *Hahn*, 321 S.W.3d at 524; *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

Where, as here, a trial court grants a summary judgment involving both no-evidence and traditional grounds, we ordinarily address the no-evidence grounds first. *See PAS, Inc. v. Engel*, 350 S.W.3d 602, 607 (Tex. App.—Houston [14th Dist.] 2011, no pet.). However, if we conclude that we must affirm the trial court's summary judgment ruling on traditional grounds, we need not review the no-evidence grounds. *Davis-Lynch, Inc. v. Asgard Techs., LLC*, 472 S.W.3d 50, 59 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Wilkinson v. USAA Fed. Sav. Bank Trust Servs.*, No. 14–13–00111–CV, 2014 WL 3002400, at *5 (Tex. App.—Houston [14th Dist.] July 1, 2014, pet. denied) (mem. op.) (affirming summary judgment on traditional grounds, without considering alternative no-evidence grounds, where evidence conclusively proved defendants were entitled to judgment as matter of law).

"A defendant moving for summary judgment on the affirmative defense of limitations bears the burden of conclusively establishing the elements of that defense." *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 833–34 (Tex. 2018) (citing *KPMG Peat Marwick*, 988 S.W.2d at 748). "This includes conclusively establishing when the cause of action accrued." *Id.* "In cases in which the plaintiff pleads the discovery rule, the defendant moving for summary judgment on limitations bears the additional burden of negating the rule." *Id.* at 834; *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998). Defendants may do this by either

conclusively establishing that (1) the discovery rule does not apply, or (2) if the rule applies, the summary judgment evidence negates it. *KPMG Peat Marwick*, 988 S.W.2d at 748; *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223–24 (Tex. 1999).

## B. Sanders's Claim to Set Aside the Documents

In her first amended petition, Sanders sought to set aside (1) the March 17, 2010 changes to the beneficiary designations on three of Brown's four insurance policies naming Hathaway as sole beneficiary; (2) the March 17, 2010 execution of four warranty deeds transferring his real property to Hathaway; and (3) the March 22, 2010 execution of documents making Brown's checking, savings, and share certificates accounts payable on death to Hathaway. Sanders argues that these documents are invalid because (1) Brown lacked mental capacity at the time he executed the  documents and (2) Hathaway exerted undue influence over Brown.

In her summary judgment motion, Hathaway argued that (1) there was no evidence that Brown lacked the mental capacity to execute the documents, and that the evidence conclusively established as a matter of law that he did not lack the mental capacity to do so, and (2) there was no evidence that she exerted undue influence over Brown at the time he executed the documents. Hathaway further argued that Sanders's claims of mental incapacity and undue influence were barred by the applicable statute of limitations, and that neither the discovery rule nor a claim of fraudulent concealment tolled limitations on her claim to set aside the contracts.

8

In her summary judgment response, Sanders argued that there is sufficient evidence to create a fact issue regarding whether Brown lacked the mental capacity to execute the documents and whether Hathaway exerted undue influence at the time of execution. She also argued that her claim seeking to set aside the documents based on lack of mental incapacity and undue influence is not barred by the statute of limitations because the discovery rule and fraudulent concealment doctrine tolled their accrual. We address the limitations argument first.

## 1. Statute of Limitations

"It is settled law in Texas that a contract executed by a person who lacks mental capacity is voidable, not void." *Cole v. McWillie*, 464 S.W.3d 896, 900 (Tex. App.—Eastland 2015, pet. denied) (citing *Williams v. Sapieha*, 61 S.W. 115, 116 (1901)); *see also Kinsel v. Lindsey*, 526 S.W.3d 411, 419 (Tex. 2017) ("Documents executed by one who lacks sufficient legal or mental capacity may be avoided."). A cause of action to void a contract is personal and belongs to the parties to a contract. *See Wells v. Dotson*, 261 S.W.3d 275, 284 (Tex. App.—Tyler 2008, no pet.). The right to disaffirm a contract survives the death of an incompetent person and descends to his heirs or his personal representative. *See McWillie*, 464 S.W.3d at 899–900 (citing *Bennett v. Romos*, 252 S.W.2d 442, 448–49 (1952)).

The right to disaffirm is subject to a four-year statute of limitations. TEX. CIV. PRAC. & REM. CODE § 16.051; *McWillie*, 464 S.W.3d at 900; *Dyer v. Dyer*, 616

9

S.W.2d 663, 665 (Tex. App.—Corpus Christi 1981, writ dism'd) ("[T]he four-year statute of limitations governs voidable deeds."). Texas Civil Practice and Remedies Code section 16.062 suspends the running of an applicable limitations period for twelve months after the death of a person against whom or in whose favor there may be a cause of action. *See* TEX. CIV. PRAC. & REM. CODE § 16.062(a). Thus, Sanders had to bring her cause of action to set aside the contracts executed by Brown no later than five years from the date of their execution.

Here, even if the beneficiary designation changes, deed transfers, and accounts payable on death were voidable because Brown lacked the mental capacity to execute them or was subjected to undue influence, the right to disaffirm those contracts ran on March 17, 2015 and March 22, 2015—five years from the March 17, 2010 and March 22, 2010 execution dates. Sanders did not file her lawsuit until June 10, 2016.

## 2. Discovery Rule

Sanders argues that her claim to set aside the contracts is not barred because the discovery rule applies and deferred accrual of her claim.

Ordinarily, a cause of action accrues when "a wrongful act causes a legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Sw. Energy Prod. Co. v. Berry–Helfand*, 491 S.W.3d 699, 721 (Tex. 2016). Absent some exception, injuries that arise or develop

10

after the legal injury are still deemed to have accrued on the same date as the legal injury that caused them. *See Pasko*, 544 S.W.3d at 834.

The discovery rule is a very limited exception to statutes of limitations. *See Computer Assocs. Int'l Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). If the discovery rule applies, it only defers accrual of a cause of action until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury, not when the plaintiff knows the specific nature of each wrongful act that may have caused the injury. *Pasko*, 544 S.W.3d at 834; *KPMG Peat Marwick*, 988 S.W.2d at 749; *see also ExxonMobil Corp. v. Lazy R Ranch, LP*, 511 S.W.3d 538, 542–43 (Tex. 2017) ("[A] claim accrues when injury occurs, not afterward when the full extent of the injury is known."). A plaintiff need not need to know that she has a cause of action; rather, she must only know "the facts giving rise to the cause of action." *Computer Assocs. Int'l*, 918 S.W.2d at 457.

The rule applies to classes of claims in which the alleged wrongful act and resulting injury were both inherently undiscoverable at the time they occurred and may be objectively verified. *See S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996). An injury is inherently undiscoverable if it is the type of injury that is not generally discoverable by the exercise of reasonable diligence. *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998). That is, an injury is not inherently undiscoverable if it could be discovered through the exercise of reasonable diligence. *See BP Am.*

11

*Prod. Co. v. Marshall*, 342 S.W.3d 59, 66 (Tex. 2011).  To be objectively verifiable, a claim must be subject to demonstration by direct, physical evidence.  *See S.V.*, 933 S.W.2d at 7.

In her summary judgment motion, Hathaway argued that Sanders, by her own admission, knew all of the facts that gave rise to her cause of action to set aside the beneficiary designation changes, deed transfers, and accounts made payable on death by September 12, 2010.  In support of her argument, Hathaway pointed to Sanders's testimony that she knew, prior to Brown's death, that he owned some property, he was sick, he was an alcoholic that drank every day, he was taking pain medication, he had experienced hallucinations in the months before he died, and that Hathaway was his primary caretaker in the year before he died.  Sanders also testified that, two days after Brown's death, she learned from Hathaway that their father did not have much when he passed away, and that other than fifty percent of one life insurance policy, he left what remained of his assets to Hathaway.

In her summary judgment response and on appeal, Sanders admits that she knew Brown had property but that she "had absolutely no idea of the nature and extent of such property."  She argues that she "did not know and could not have known exactly when the beneficiary designations and bank accounts were changed, or when the property was transferred."  However, the summary judgment evidence demonstrates that Sanders only began investigating the extent and nature of Brown's

12

assets and later filed suit after she learned from an uncle that Brown had assets worth approximately $1,000,000 before he died. Sanders knew of her alleged injury, i.e., that Brown gave almost all of his property to Hathaway and left her virtually nothing, on September 12, 2010, two days after Brown died. It is the fact of the alleged injury—that Hathaway kept property that Sanders may have been entitled to—that started the running of the statute of limitations. *See, e.g., Johnson v. Walker*, 824 S.W.2d 184, 187 (Tex. App.—Fort Worth 1991, writ denied) ("The fact that a party may not immediately be able to determine the total amount of damages it may suffer does not toll the statute of limitations."). Once Sanders knew of facts that might constitute some injury, the statute of limitations began to run even if she did not yet know "the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it." *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 207 (Tex. 2010). That Sanders did not know the extent of her alleged injury, i.e., the dollar value of Brown's assets, is irrelevant to determining when the statute of limitations began to run. *Yalamanchili v. Mousa*, 316 S.W.3d 33, 38 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("[A]ccrual occurs upon notice of injury, even if the claimant does not yet know the full extent of damages.") (quoting *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 270 (Tex. 2004)). Thus, applying the discovery rule, the four-year statute of limitations (plus the additional year due to Brown's death) began to run from the date Sanders knew of her legal

injury, *i.e.* September 12, 2010. The statute of limitations ran by September 12, 2015, nine months before Sanders filed her suit on June 10, 2016.

### 3. Fraudulent Concealment

Sanders also argues the doctrine of fraudulent concealment tolled the statute of limitations on her cause of action to set aside the documents.

The doctrine of fraudulent concealment is based on the doctrine of equitable estoppel. *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1981). Fraudulent concealment estops a defendant from relying on the statute of limitations as an affirmative defense when the defendant owes a duty to disclose but fraudulently conceals the existence of a cause of action. *Id.* "A party asserting fraudulent concealment must establish an underlying wrong, and that 'the defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff.'" *BP Am. Prod. Co.*, 342 S.W.3d at 67 (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999); *Weaver v. Witt*, 561 S.W.2d 792, 793 (Tex. 1977) (per curiam)); *see Lilly v. Tex. Dep't of Crim. Justice*, 472 S.W.3d 411, 420 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("The elements of fraudulent concealment are: (1) existence of an underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception."). A party asserting fraudulent concealment as an affirmative defense to the statute of limitations bears the burden to raise it in

14

response to the summary judgment motion and to come forward with summary judgment evidence raising a fact issue on each element of the defense. *KPMG Peat Marwick*, 988 S.W.2d at 749.

"Fraudulent concealment only tolls the running of limitations until the fraud is discovered or could have been discovered with reasonable diligence." *BP Am. Prod.*, 342 S.W.3d at 67. If the fraudulent concealment is based on a fraudulent representation by the defendant, the plaintiff must demonstrate that reliance on that representation was reasonable. *See id.* at 68. Reliance on a fraudulent representation "is not reasonable when information revealing the truth could have been discovered within the limitations period." *Id.*

In her summary judgment response, Sanders argued that there was sufficient evidence of each element of fraudulent concealment because (1) Hathaway told her facts that were not true two days after their father died, (2) when Sanders began investigating a potential cause of action against Hathaway, Hathaway knowingly and intentionally refused to provide any information, (3) and Hathaway did so with a fixed purpose of concealing the wrongs she committed before their father's death. Taking Sanders's factual allegations as true, *see Valence Operating Co.*, 164 S.W.3d at 661, they do not raise a fact issue as to the existence of an underlying wrong. Sanders's assertions that Hathaway told her facts that were not true, refused to provide her with information, and did so with the purpose of concealing her alleged

15

wrongdoing might provide the element of deception, but they are not evidence of an underlying wrong. *See Lazy R Ranch*, 511 S.W.3d at 544 (concluding fraudulent concealment doctrine did not toll limitations period on ranch owners' claim of surface contamination against petroleum company where there was no evidence of, among other things, misconduct on company's part with respect to spills on property or at abandoned sites).

In sum, Sanders's cause of action to set aside Brown's beneficiary designation changes, deed transfers, and making of accounts payable on death ran on March 17, 2015 and March 22, 2015—five years from the March 17, 2010 and March 22, 2010 execution dates. Applying the discovery rule, Sanders's claim began to run from the date Sanders knew of her legal injury, i.e. September 12, 2010, and, under the applicable four-year statute of limitations plus the additional year due to Brown's death, her claim ran by September 12, 2015. Finally, the doctrine of fraudulent concealment did not toll limitations on Sanders's claim because there is no evidence in the record that Brown's actions in transferring assets to Hathaway were the result of wrongful conduct on Hathaway's part. We conclude that the trial court did not err in granting summary judgment on Sanders's claim to set aside the documents.

## C. Sanders's Fraud Claim

Sanders contends that the trial court erred in granting summary judgment on her claim of common law fraud because the evidence is sufficient to raise a fact issue

16

on all of the elements of her claim. Hathaway argues that Sanders has presented no evidence to support her fraud claim.

To prove fraud, Sanders must establish that (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker either knew it was false or made the statement without knowledge of the truth; (4) the speaker intended the representation to be acted upon; (5) the party acted in reliance upon the representation; and (5) the party suffered injury. *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)). In her summary judgment response, Sanders argued that the evidence showed that (1) Hathaway told Sanders that Brown had left his entire estate to Hathaway in a trust but then failed and refused to disclose the trust documents to her; (2) Hathaway's representation was false because the purported trust was never funded; (3) Hathaway intended Sanders to rely on the representation and not take action regarding Brown's estate; (4) Sanders justifiably relied on Hathaway's representation and did not take action until much later; and (5) Sanders suffered injury because she did not obtain any part of her father's estate to which she is justly entitled.

A material representation is one which "a reasonable person would attach importance to and would be induced to act on . . . in determining his choice of actions

17

in the transaction in question." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (quoting *Smith v. KNC Optical, Inc.*, 296 S.W.3d 807, 812 (Tex. App.—Dallas 2009, no pet.)); *Samson Lone Star Ltd. P'ship v. Hooks*, 497 S.W.3d 1, 13–14 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). Hathaway's representation to Sanders—that Brown conveyed his entire estate to Hathaway through a trust rather than through beneficiary designations changes to his insurance policy, deed transfers, and making his accounts payable on death—is not a material misrepresentation. It is undisputed that Brown conveyed his property to Hathaway—that he did so through beneficiary changes, deed transfers, and making his accounts payable on death, rather than through the instrument of a trust, is immaterial. Further, Sanders has not shown how she was injured as a result of the representation. Her alleged injury, i.e., that she did not obtain any part of her father's estate to which she is justly entitled, was not caused by Hathaway's representation that Brown conveyed his estate to her through a trust. Rather, it is the fact that Brown left his property to Hathaway in the first place that caused her injury, if any.

Because there is no evidence of a material representation or injury, we conclude that the trial court did not err in granting summary judgment on Sanders's common law fraud claim.

**D. Sanders's Fraudulent Inducement Claim**

In her brief, Sanders states that Hathaway did not challenge Sanders's claim for fraudulent inducement. In her summary judgment motion, Hathaway argued that Sanders's cause of action for fraudulent inducement failed as a matter of law because Sanders and Hathaway did not enter into a contract together and no cause of action exists for general fraudulent inducement.

Fraudulent inducement is a distinct category of common-law fraud that shares the same elements but involves a promise of future performance made with no intention of performing at the time it was made. *Zorrilla*, 469 S.W.3d at 153. To prevail in a fraudulent inducement claim, the plaintiff not only must establish all of the elements of a fraud claim, but must establish those elements "as they relate to an agreement between the parties." *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001). Because we conclude that Sanders did not establish all of the elements of her fraud claim, much less as they relate to an agreement with Hathaway, the trial court properly granted summary judgment on this claim.

**E. Sanders's Breach of Fiduciary Duty Claim**

Sanders contends that the trial court erred in granting summary judgment on her claim of breach of fiduciary duty because the evidence is sufficient to raise a fact issue on the elements of her claim.

To prove breach of fiduciary duty, Sanders must establish that (1) a fiduciary relationship existed between the plaintiff and the defendant; (2) the defendant breached her fiduciary duty; and (3) the breach resulted in injury to the plaintiff or benefit to the defendant. *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). In her summary judgment response, Sanders argued that the evidence showed that (1) an informal fiduciary duty existed between Brown and Hathaway; (2) Hathaway breached her fiduciary duty to Brown by transferring the entirety of Brown's estate to herself; and (3) Hathaway's breach was detrimental to Brown and Sanders.

Contrary to Sanders's assertion, there is no evidence that Hathaway "transferred the entirety of Brown's estate to herself." The evidence shows that, on March 17, 2010, Brown changed the beneficiary designations on three of his four insurance policies to Hathaway but left Sanders and Hathaway as co-beneficiaries under one of his policies. That same day, Brown also executed four warranty deeds transferring his real property to Hathaway, and the deeds were signed and notarized before a notary public. Five days later, on March 22, 2010, Brown went to his credit union and executed documents in front of credit union employees to make his checking, savings, and share certificated accounts payable on death to Hathaway. This evidence shows that Brown, not Hathaway, distributed his property to Hathaway.

20

Because Sanders has not produced any evidence showing that Hathaway breached a fiduciary duty to Brown, summary judgment on her breach of fiduciary duty claim was proper.[2] Accordingly, we overrule Sanders's first and second issues.

## Conclusion

We affirm the trial court's judgment.

Russell Lloyd
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

---

[2] The trial court granted summary judgment on Sanders's claim of tortious interference with inheritance. The Texas Supreme Court recently held that "[b]ecause existing law affords adequate remedies for the wrongs [tortious interference with inheritance] would redress, and because the tort would conflict with Texas probate law, we hold that there is no cause of action in Texas for intentional interference with inheritance." *Archer v. Anderson*, 556 S.W.3d 228, 229 (Tex. 2018). Presumably in light of *Archer*, on appeal Sanders does not challenge the trial court's grant of summary judgment on her tortious interference with inheritance claim.